**UNITED STATES ex rel. BETTY v. DAY, Commissioner of Immigration.**

Circuit Court of Appeals, Second Circuit. January 9, 1928.

No. 216.

**1. Citizens ☞9—Residence of alien father is not imputed to·child under statutes relating to citizenship (8 USCA §§ 7, 8).**

Under Rev. St. § 2172 (8 USCA, § 7) and Act March 2, 1907, § 5 (8 USCA § 8), relating to children of naturalized citizens, residence of father is not imputed to child, like domicile, so that minor son residing in Italy after father's naturalization, who entered United States at age of 22, was not citizen.

**2. Citizens ☞9—Alien child, who was in foreign country when father was naturalized, was not citizen on subsequent entry when 22 years of age (8 USCA § 8).**

Where alien was born in Italy in 1903, came with his father to United States in 1904, and remained until 1910, when he returned to Italy, and his father was naturalized in 1920, and died in 1925, and alien entered in 1926, then aged 22 years, as temporary visitor, he was not United States citizen, under Act March 2, 1907, § 5 (8 USCA § 8), and was subject to deportation, having outstayed his time, since repetition of phrase "such minor child" in statute implied acquisition of residence during minority.

**3. Citizens ☞9—Alien's residence in United States as minor before father was naturalized was abandoned by 16 years' absence (8 USCA § 8).**

Alien's residence in United States between 1904 and 1910, before father was naturalized in 1920, was abandoned by 16 years' absence, and did not make him citizen because of father's naturalization, under Act March 2, 1907, § 5 (8 USCA § 8).

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on the relation of Elio Betty, against Benjamin M. Day, Commissioner of Immigration at the port of New York. From an order dismissing a writ of habeas corpus, issued to release relator from an order of deportation, relator appeals. Affirmed.

The sole issue was of the alien's citizenship, as to which the facts are as follows: He was born in Italy in October, 1903, came with his father to this country in 1904, and remained till 1910, when he went back to Italy. His father was naturalized in July, 1920, and died in November, 1925. The alien entered in January, 1926, then aged 22 years, as a temporary visitor, and, having outstayed his time, was arrested on January 31, 1927, and ordered deported on April 29th of that year.

De Pasquale & Marcantonio, of New York City (Nicholas De Pasquale, of New York City, of counsel), for appellant.

Charles H. Tuttle, U. S. Atty., of New York City (Alvin McKinley Sylvester, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

PER CURIAM. [1] It is settled law in these statutes that the residence of the father is not imputed to the child, like domicile. Kaplan v. Tod, 267 U. S. 228, 45 S. Ct. 257, 69 L. Ed. 585; U. S. ex rel. Patton v. Tod (C. C. A.) 297 F. 385. Therefore, when the alien entered, he was not already a citizen. This had also been held under Revised Statutes, § 2172, 8 USCA § 7, in Zartarian v. Billings, 204 U. S. 170, 27 S. Ct. 182, 51 L. Ed. 428, where indeed it was plainer, because an infant could scarcely have been said to "dwell" in the United States, even if the residence of his father was imputed to him. The question was indeed there left open whether an infant, who was abroad when his father was naturalized, could gain an imputed allegiance upon "dwelling" here subsequently, but that was set at rest by section

5 of the Act of 1907 (8 USCA § 8). Certainly, after Zartarian v. Billings, it could not be supposed that the allegiance changed while the infant was abroad, whatever be the explanation of Peck v. Young, 26 Wend. 613.

[2] It is true that the alien in the case at bar had actually entered, as was not true in the cases cited. Whether his entry as a temporary visitor only could give him a "permanent residence," whatever his intent, we need not consider. It is enough that he was no longer an infant when he did enter. The proviso of section 5 of the act of 1907 reads that "the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States." The repetition of the phrase "such minor child" was entirely unnecessary, unless it implied the acquisition of residence during minority. Congress cannot have meant to allow an adult to evade the qualifications of citizenship merely because his father had been accepted. With infants it was different; the law in general imputed to them their parents' status. Moreover, their presence here during infancy may be thought to insure their assimilation with citizens generally, and to vouch for their qualifications. Whatever the reason, they were excepted, but only when they entered while incapable of personal naturalization.

[3] We cannot see that the alien's residence here between 1904 and 1910 was relevant. Whatever it was, it was abandoned by 16 years' absence. To admit its competence would be to invite just those embarrassments which the statute was meant to avoid.

Order affirmed.