**UNITED STATES ex rel. ABERASTURI v. CAIN, Commanding Officer, U. S. Army.**

**No. 148.**

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1945.

CLARK, Circuit Judge, dissenting.

Louis J. Opal, of New York City, for relator-appellant.

T. Vincent Quinn, of Brooklyn, N. Y. (Vine H. Smith and Anthony G. Greco, both of Brooklyn, N. Y., of counsel), for respondent-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

In asserting that relator, on March 27, 1943 was a citizen of the United States, respondent is compelled to take the following position: (1) Respondent admits that, under the Nationality Act of 1940, 8 U.S. C.A. § 501 et seq., which became effective January 13, 1941, a minor child of alien parents, only one of whom was naturalized during the child's minority, does not become a citizen of the United States by mere length of residence of the child in this country. (2) Nevertheless, says respondent, such a minor, if he began to reside here on January 12, 1941, one day before the 1940 Act went into effect, and if, without

more, he continued his residence here for five years—until January 12, 1946—will become a citizen on that date; for, respondent contends, the one day of residence before January 13, 1941, creates an "inchoate citizenship" which, under the Nationality. Act of 1934, would have ripened into citizenship after five years of continued residence, and such "inchoate citizenship" with such attendant consequences was preserved by the "saving clause" of the 1940 Act.

■ We do not agree. That "saving clause" preserves merely the "validity" of a "declaration of intention, petition for naturalization, certificate of naturalization of citizenship, or other document which shall be valid" on the effective day of the Act, January 13, 1941, or any "prosecution, suit, action, or proceedings, civil or criminal, brought, or any act, thing, or matter, civil or criminal, done or existing" on that day. We think that this provision does not cover a mere condition, unattended by any affirmative action by the alien or by anyone else. In other words, we do not think that Congress in the 1940 Act intended that the mere fact of residence before January 13, 1941, should operate to continue, for a maximum period of four years and three hundred and sixty-four days thereafter, the precise privilege [and obligation] which would have existed under § 2 of the 1934 Act if the 1940 Act had not been enacted. (We do not need to, and do not here, consider a case where an alien child or someone on his behalf had, before January 13, 1941, taken some affirmative action on the child's behalf.)

■ Since relator had not completed five years of residence in this country before January 13, 1941, he was not a citizen on March 27, 1943 when, pursuant to the Selective Training and Service Act, he filed a statement of his election as a neutral alien to be exempt from "liability for training and service" under that Act. Neither his previous registration under that statute nor his previous statement in his questionnaire, "I am a citizen of the United States" constituted a waiver of that statutory right of election; for one who erroneously thought himself a citizen of the United States [1] cannot be regarded as intending to waive a right belonging solely to a neutral alien. And relator's mistaken

assertion of American citizenship could not create that status.

■ The issue here being the correct interpretation of the statutes, United States ex rel. Brandon v. Downer, 2 Cir., 139 F. 2d 761, and United States ex rel. Trainin v. Cain, 2 Cir., 144 F.2d 944, are not in point. We are not bound by the interpretation of the Naturalization Law given by the Department of Justice.

It follows from what we have said that relator was unlawfully inducted and should be released.

Reversed.

CLARK, Circuit Judge (dissenting).

The opinion does not make clear whether the saving clause of the Nationality Act of 1940, 8 U.S.C.A. § 747(a), operates only one way to serve as a privilege for the alien. The broad and all-inclusive nature of the language used would seem to indicate an intention to preserve the rights and privileges of the alien in cases such as the very one visualized in the opinion. Had a recently naturalized parent striven to get his child out of Europe and only succeeded even a day before the new Act took effect, I think we would all recognize the harshness of a ruling depriving the alien child of any rights he otherwise would have had and accept the departmental interpretation that this was the purpose of the Act. Surely the use of such words, in addition to "prosecution, suit, action, or proceedings;" as "act, thing, or matter" goes about as far as language can to disclose such an inclusive intent. And the addition of "thing, or matter" to "act" shows that it does cover what is referred to as a mere condition, unattended by any affirmative action by the alien, which, it may be thought, is hardly a complete characterization of the act of coming to this country for at least indefinite, and seemingly permanent, residence.

The more serious question, it seems to me, is whether the alien alone can rely upon the clause. What that would mean is that the alien would have the opportunity to disaffirm citizenship when he thought it burdensome. Conceivably Congress might intend such an option, although the anomalies resulting are obvious. They are

---

[1] As the adult members of the Selective Service Headquarters disagreed with the adult members of the Local Draft Board as to whether relator was a citizen of this country, it is not surprising that relator, still a minor when he filed his questionnaire, made such a mistake.

indicated in this very case where the relator showed every outward semblance of relying on the provision, even asserting his citizenship to the draft board, until the very time when he was to be inducted. But the clause is worded to apply generally, not to offer a unilateral privilege; and I think we should not favor an interpretation leaving the high obligation, as well as right, of citizenship to a determination at once so indefinite and so subject to individual caprice or desire. In addition to the views of the Naturalization Service and the court below, the cases of Petition of Otness, D.C. N.D.Cal., 49 F.Supp. 220, and In re Shaver, 7 Cir., 140 F.2d 180, favor a broad interpretation of the statute; nothing hitherto has suggested a narrow one. I would affirm.