**ACHESON, Secretary of State, v. ALBERT.**

No. 11103.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 10, 1952.

Decided March 20, 1952.

---

Joseph F. Goetten, Asst. U. S. Atty., Washington, D. C., with whom George Morris Fay, U. S. Atty. at the time the brief was filed, and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellant. Charles M. Irelan, U. S. Atty. at the time of argument, Washington, D. C., also entered an appearance for appellant.

Joseph Forer, Washington, D. C., with whom David Rein, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, PROCTOR and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

In this case the United States District Court for the District of Columbia issued a judgment, pursuant to 8 U.S.C.A. § 903, declaring that the plaintiff-appellee, Irving Albert, is a citizen of the United States. The decree also enjoined the defendant Dean G. Acheson, Secretary of State, from denying Albert a passport "on the ground or for the reason that he is not a citizen of the United States of America."[1] The Secretary of State appeals.

Irving Albert was born in Poland of Polish parents on December 19, 1921. His father became a citizen of the United States by naturalization on May 11, 1928. The son emigrated to the United States in May 1938, and has since that time maintained permanent residence in this country. In 1950 he applied to the Department of State for a passport. His request was denied on the ground that he was not a citizen. The present action followed.

Albert claims to have acquired an inchoate right of citizenship under section 2 of the Act of May 24, 1934,[2] by virtue of

---

1. See Perkins v. Elg, 307 U.S. 325, 349-50, 59 S.Ct. 884, 83 L.Ed. 1320.

2. 48 Stat. 797. Appellee also contends that such a right accrued under section 5 of the Act of March 2, 1907, 34 Stat. 1229, but our view of the effect of the 1934 Act makes it unnecessary to consider this contention.

his father's naturalization and of his own commencement of residence in 1938. He contends that this right was not annulled by the passage of the Nationality Act of 1940,[3] and that full citizenship became his upon completion of the five years residence required by the 1934 Act. The Government now concedes that the requirements of the 1940 statute are not controlling here,[4] in view of our ruling in Bertoldi v. McGrath, 86 U.S.App.D.C. 1, 178 F.2d 977, but it argues that citizenship was not acquired under the 1934 enactment. The contest is over the meaning to be given to the following language appearing in section 2 of the 1934 Act: " * * * a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the father or the mother: *Provided*, That such naturalization or resumption shall take place during the minority of such child: *And provided further*, That the citizenship of such minor child shall begin five years after the time such minor child begins to reside permanently in the United States."

The Government reads the last proviso of this section as meaning that it is only a *minor* child who can acquire derivative citizenship, and argues that Albert, who was twenty-two years of age when he fulfilled the five years residence requirement, could not and did not become a citizen under the Act. Appellee's view, on the other hand, is that the words "such minor child" have reference simply to the fact that the child who is to acquire citizenship must, by the first proviso, be under twenty-one at the time of the parent's naturalization. He argues that the second proviso is intended only to require a specific term of residence before citizenship begins, and

commencement of residence during the minority of the child.

The words of the proviso itself shed little light on which of these meanings is intended. That being so, we must look to the principal clause of the section for guidance as to the main and governing purpose of Congress. That purpose is that "a child" of alien parents who is born outside the United States "shall be deemed a citizen" by derivation from a parent who has acquired citizenship. No requirement appears in the governing clause that the child be a minor. Restrictions with regard to age appear only in the two provisos. Those restrictions must be construed in a manner consistent with and ancillary to the paramount purpose of Congress. United States v. Dickson, 1841, 15 Pet. 141, 40 U.S. 141, 10 L.Ed. 689.

If Congress had intended the result for which the Government contends, it could have expressed that intention very easily and clearly by adopting a formula similar to that contained in section 1 of the same Act (of March 24, 1934), which dealt with children born abroad of parents one or both of whom already was a citizen. Section 1 spelled out explicitly the requirement that the child must complete the waiting period of United States residence prior to a stated age. [5] But Congress did not do that in section 2. It simply took the second proviso contained in section 5 of the 1907 Act,[6] to the effect that "the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States," and amended it by inserting the words "five years after" in place of the word "at." What could it have intended by so doing other than to create a waiting period of five years? [7] Certainly we cannot believe that

3. 54 Stat. 1145, 8 U.S.C.A. § 714.

4. The State Department's original denial of the citizenship claim rested on the theory that the passage of the 1940 Act deprived plaintiff of the possibility of acquiring derivative citizenship on the facts presented.

5. The pertinent provision read: "In cases where one of the parents is an alien, the right of citizenship shall not descend unless the child comes to the United States

and resides therein for at least five years continuously immediately previous to his eighteenth birthday, and unless, within six months after the child's twenty-first birthday, he or she shall take an oath of allegiance to the United States of America as prescribed by the Bureau of Naturalization." 48 Stat. 797. See 78 Cong.Rec. 7355.

6. 34 Stat. 1229.

7. This amendment was proposed from the floor by Representative Dies. His de-

Congress by this rather cryptic change intended radically to lower the age for taking up residence, so as to make it impossible for minors arriving in this country after their sixteenth birthday to acquire derivative citizenship.

We assume that under the second proviso in the 1907 Act Congress intended to require that the child be a minor at the time he entered the United States to take up residence: the phrase "the citizenship of such minor child shall begin" when "such minor child begins to reside permanently in the United States" can be read to require that residence must begin during minority. See United States ex rel. Betty v. Day, 2 Cir., 23 F.2d 489, 490. The amendment made in 1934 did not change the quoted words, or the requirement they impose, and we assign them no different meaning than they conveyed when enacted. The words which were inserted called for a waiting period, and we give them that effect.

The Government seeks support for its position from the circumstance that throughout the earlier and subsequent history of the naturalization laws, derivative citizenship was available only to minors. But as no statute before or since the 1934 Act (including the Act of 1940, now in force) required a waiting period of residence,[3] we fail to see any force in this argument. We conclude, therefore, that the District Court correctly ruled that Albert was a citizen.

■ The Government also complains of the form of the injunction granted by the District Court. It objects principally to the fact that the injunction runs not only against Dean G. Acheson, Secretary of State, but also against "his successors in office." We consider, however, that there will be time enough to examine the merit of this objection when some attempt is made to enforce the order against a future Secretary of State.[9] If continuation of the injunction in its present form should for any reason become illegal or inequitable, relief in respect of an actual controversy regarding its application and effect may be sought in the District Court under Rule 60(b), Fed.Rules Civ.Proc. 28 U.S.C.A.[10]

The judgment will be

Affirmed.

clared intention in offering the amendment was to make section 2 "the same" as section 1. See 78 Cong.Rec. 7355, 7356; compare ibid. 7340, 7342. What he meant by "same," however, is most uncertain. For not only is the language very obviously not the same in the two sections, but they deal with different subject matters and impose different age requirements. The element of "sameness" rests in the requirement of a five year waiting period, imposed in both sections. Certainly that is all which could be gathered from the amending language, and no other intent can be imputed to Congress on the strength of a statement from the floor of a single House, with regard to a provision never taken up or commented on by a committee of either House. "To accept legislative debates to modify statutory provisions is to make the law inaccessible to a large part of the country." Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 396–397, 71 S.Ct. 745, 751, 95 L.Ed. 1035, per Justice Jackson, concurring.

8. Act of March 26, 1790, 1 Stat. 103, 104; Act of March 2, 1907, 34 Stat. 1229; Nationality Act of 1940, 54 Stat. 1145, 8 U.S.C.A. § 714.

9. Compare Regal Knitwear Co. v. NLRB, 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661; Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 234–235, 38 S.Ct. 65, 62 L.Ed. 260; and see Rule 65(d), Fed.R. Civ.P. The judgment entered in the present case would no doubt be *res judicata* on the law and facts as against the Secretary's successors in office. New Orleans v. Citizens' Bank, 167 U.S. 371, 388–389, 17 S.Ct. 905, 42 L.Ed. 202; Safeway Stores v. Porter, Em.App., 154 F.2d 656; Finch v. Dobbs, 112 Miss. 73, 72 So. 858. If the language used is intended to reflect simply that fact, it can do no harm. Whether a citation for contempt could be issued against a successor in office is a question we need not here consider; certainly the inclusion of the words complained of could not be decisive of that issue when and if it should arise.

10. The Government also urges that the injunction is too broad in that it prohibits refusal of a passport by reason of non-citizenship, whereas it is possible that Albert might some day forfeit or lose citizenship under present or future legislation. This objection contemplates eventualities too speculative to warrant present consideration.