**Application of SHOMBERG.**

United States District Court,
S. D. New York.
Aug. 21, 1953.

ization where there was outstanding a final finding of deportability and prohibited final hearing in naturalization if a deportation proceeding was pending. Petitioner was not, however, liable to deportation at that time and was therefore, so far as this provision for priority of deportation proceedings was concerned, eligible for naturalization. Two days later, nevertheless, on December 24, 1952, the Immigration and Nationality Act of 1952 went into effect and, by its section 241(a) (4), created as a new ground for deportation the commission at any time of two felonies involving moral turpitude. Petitioner had committed two such felonies, one in 1913 and one in 1915. Pursuant to that section deportation proceedings were begun against him on June 23, 1953, and they are now pending undetermined.

Petitioner, in spite of the provision for priority of deportation proceedings, makes this motion for an order that his petition for naturalization filed on December 22, 1952 be brought on for final hearing forthwith and that the deportation proceeding be stayed pending determination of the naturalization proceeding.

The provision for priority of deportation proceedings grew out of the fact that there were cases where an alien subject to deportation was nevertheless eligible for naturalization. This led to a race between the Attorney General and the alien, the Attorney General seeking to deport the alien and the alien seeking to obtain naturalization. See United States v. Waskowski, 7 Cir., 1947, 158 F.2d 962; United States ex rel. Walther v. District Director of Immigration & Naturalization, 2 Cir., 1949, 175 F.2d 693; Petition of Kavadias, 7 Cir., 1949, 177 F.2d 497. Congress in 1950 gave the clear track to the Attorney General by adopting the priority section providing against naturalization after issuance of a warrant of deportation and staying naturalization proceedings pending deportation proceedings. See United States ex rel. Jankowski v. Shaughnessy, 2 Cir., 1951, 186 F.2d 580, 582.

Max Schultz, New York City (Alan Y. Cole, Washington, D. C., of counsel), for petitioner.

Louis Steinberg, District Counsel U. S. Department of Justice Immigration & Naturalization Service, Brooklyn, N. Y., Max Blau, Attorney U. S. Department of Justice Immigration & Naturalization Service, New York City, for the United States.

DIMOCK, District Judge.

Petitioner in this naturalization proceeding filed his petition on December 22, 1952. At that time there was in force section 329(c) of the Nationality Act of 1940, as added by section 27 of the Internal Security Act of 1950, 8 U. S.C. § 729(c), which prohibited natural-

Since the adoption of the priority provision it is within the power of the Attorney General, by the institution or withholding of deportation proceedings against an alien who is subject to deportation, either to stay his naturalization proceedings and deport him or to let him proceed to the safe refuge of a certificate of naturalization.

The provision for priority of deportation proceedings was continued in section 318 of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1429, which, so far as important here, reads as follows:

"Sec. 318. * * * Notwithstanding the provisions of section 405(b) * * * no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this, or any other Act; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act".

Petitioner's ground for moving for a hearing of his naturalization petition despite the institution of deportation proceedings is a savings provision in the Immigration and Nationality Act of 1952, § 405, 8 U.S.C.A. § 1101 footnote, which, so far as important here, reads as follows:

"Sec. 405. (a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in proc-

ess of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *

"(b) Except as otherwise specifically provided in title III, any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed."

Petitioner takes the position that the new provision in the Act, section 241(a)(4), making the conviction of two felonies involving moral turpitude at any time a ground for deportation, by its terms permits a deportation proceeding against him to go to a final finding of deportability and thus, if section 318, the priority section, is given literal effect, prevents his naturalization and consequently "affect[s] the validity of" his "petition for naturalization" and "affect[s]" his "right" to naturalization "in process of acquisition".

Petitioner attempts to harmonize these to him discordant provisions by saying that it is only to proceedings based on warrants of deportation issued on grounds in existence prior to the 1952 Act that the priority afforded by section 318 applies. While that might have been an intelligible legislative scheme, Congress used no words to indicate that that was its intention. To read it into the statute would be judicial legislation.

Petitioner argues as an alternative that the priority section, in dealing with deportation proceedings, as distinguished from final findings of deportability, is subordinate to the provisions of section 405(b) which direct that the

hearing and determination of naturalization petitions shall be in accordance with the requirements of law in effect when they were filed.

Petitioner reaches this result by an extremely close reading of section 318. He calls attention to the fact that the first clause, which deals with final findings of deportability and is made effective "notwithstanding the provisions of section 405(b)", is separated by a semicolon from the clause which deals with deportation proceedings while pending before the final finding of deportability. It is said that this second clause, unlike the first, is not made effective "notwithstanding the provisions of section 405 (b)" and that therefore section 405(b) must govern insofar as deportation proceedings which have not reached the point of findings of deportability are concerned so that all pending naturalization proceedings where the right to naturalization existed prior to the effective date of the Act of 1952 may proceed to a final determination despite any deportation proceedings that may be instituted.

It is true that the semi-colon on which this construction depends was first introduced into the priority section when the words "notwithstanding the provisions of section 405(b)" were prefixed in the course of the enactment of the Act of 1952. Nevertheless, the complete lack of any explanation for a desire of Congress to change the previous statutory scheme and provide for differentiation of the treatment of deportation proceedings before final finding from that after final finding and the complete absence of any indication, outside of the punctuation, of an intention to make such a change lead me to believe that the introduction of the semi-colon does not have the effect which petitioner attributes to it. See Forlini v. United States, 2 Cir., 1926, 12 F.2d 631; Egyptian Supply Co. v. Boyd, 6 Cir., 1941, 117 F.2d 608. I believe that both clauses are intended to be effective "notwithstanding the provisions of section 405 (b)".

Petitioner then points out that, even if section 405(b) is subordinated to both clauses of section 318, it is section 405(b) alone that is subordinated and thus section 405(a) is presumably left in full force and effect.

The only express references to naturalization proceedings in section 405(a) are to specific papers: declarations, petitions and certificates. It provides that nothing in the Act shall affect their validity if they were valid when the Act took effect. On petitioner's theory, section 405(a), declaring that the validity of a petition for naturalization is unaffected by the Act of 1952 if valid when the Act takes effect, is paramount to section 318 which gives priority to deportation proceedings. That does not advance petitioner's case, however. Petitioner's petition for naturalization may well be valid and still not prevent the subordination of the naturalization proceedings to the deportation proceedings. What section 405(a) means, when it declares the continued validity of valid petitions for naturalization, is that a filed petition which satisfied all of the conditions precedent and requirements of the old law would be deemed valid under the new law. Section 405(b) deals with the steps taken after the filing of the petition for naturalization in pending cases and, as to those steps, it says that the petition shall be heard and determined according to the old law except as specifically provided in title III. Title III contains several specific provisions that the petition for naturalization shall in certain respects be heard and determined according to the new law "notwithstanding the provisions of 405(b)". Among these is the provision of the priority section, section 318, here in question. Other instances are section 311 making new provisions for eligibility on account of race, sex and marriage, section 313 (a) making new provisions as to subversives, section 315(a) making new provisions with respect to aliens relieved from military service and section 331(d) making new provisions as to alien enemies.

**340**

In my view, section 405(b) is the only provision of the Immigration and Nationality Act of 1952 which, in pending cases, makes the provisions of the old act applicable to the proceedings after the filing of the petition. It is true that the part of section 405(a) which continues the old act in force as to any "right in process of acquisition" would, in its general terms, apply to naturalization proceedings but the fact that section 405(b) specifically makes exactly that provision as to naturalization proceedings indicates that the general lanuage in section 405(a) does not apply to them. Thus, when section 318 provides for priority of deportation proceedings "notwithstanding the provisions of section 405(b)", it precludes reliance on the preservation of rights under the old law to keep naturalization proceedings from being superseded by deportation proceedings.

Petitioner argues that, if section 318 is permitted to bar a final hearing on his naturalization petition, it has the effect of rendering the savings clauses in section 405 entirely meaningless. That is not true. The savings clauses preserve for pending proceedings all of the old law as to naturalization. It is only the old law as to deportation which is rendered inapplicable by section 318.

Motion denied and stay restraining prosecution of deportation proceedings vacated.