**Petition of MENASCHE.**

**No. 5308.**

United States District Court,
D. Puerto Rico, San Juan Division.

Sept. 24, 1953.

Thomas I. Nido, of the Firm Fiddler, Gonzalez & Nido, San Juan, Puerto Rico, for petitioner.

Eugene E. Cole, Chief of the Nationality & Status Section Immigration & Naturalization Service, Miami, Fla., for the government.

RUIZ–NAZARIO, District Judge.

The petition for Naturalization of Richard Isaac Menasche, petitioner herein, came up for final hearing under Sections 336(a), Chapter 2, Title III of the Immigration and Nationality Act of 1952, Title 8 U.S.C.A. § 1447(a), on August 17, 1953 at 9:30 o'clock in the morning. Documentary and oral evidence was adduced at said hearing and the case submitted to the Court on written memoranda filed by the parties, which have been the subject of due consideration by the Court.

The only question at issue is whether petitioner is bound to comply with the physical presence requirement of Section 316(a) of the Immigration and Nation-

ality Act of 1952, Title 8 U.S.C.A. § 1427 (a).

The government concedes that if petitioner had filed his petition under the Nationality Act of 1940, he would have met the residence requirement for naturalization contained in Section 307(a) of said Act, Title 8 U.S.C.A. § 707(a) and that, were it not for the physical presence requirement of Section 316(a) of the Immigration and Nationality Act of 1952, Title 8 U.S.C.A. § 1427(a), he would be eligible to citizenship because of his meeting of all other requirements therefor under both acts.

Petitioner concedes that if he is compelled to meet said physical presence requirement of the Immigration and Nationality Act of 1952, he would not be yet eligible to citizenship, but claims that such requirement is inapplicable to him because the validity of his Declaration of Intention made on April 16th 1948 under the Nationality Act of 1940 and the proceeding initiated thereby, as well as the status, condition and right in process of acquisition derived therefrom and done or existing at the time the Immigration and Nationality Act of 1952 took effect, must be deemed to have continued in full force and unaffected by the adoption of the latter act, and that his naturalization must be, therefore, governed by the provisions of the Nationality Act of 1940, which pursuant to the Saving Clause, Section 405(a) of the 1952 Act, Title 8 U.S.C.A. § 1101 note was in that respect expressly left in full force and effect.

Thus, the problem is reduced to determining whether under the provisions of the aforesaid saving clause petitioner is or is not bound to comply with the physical presence requirement of the Immigration and Nationality Act of 1952.

The legislative history of the Immigration and Nationality Act of 1952 sheds no light for the solution of this problem.

The analogy of some judicial precedents invoked by petitioner affords, however, convincing reasons towards a just and equitable solution thereof.

In Petition of Sproule, D.C., 19 F.Supp. 995, 997, the court characterized "the declaration of intention" as "the first step in the process of naturalization", further stating that the "declarant" thereof "acquires an *inchoate nationality*" even though "he remains an alien until the naturalization is *completed*", and acknowledging that certain *rights* flow from a declaration of intention, subject, however, to a strict construction. (Emphasis supplied.)

See also Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255, holding that, for certain purposes, the status of a declarant under a Declaration of Intention is sufficiently different from that of a nondeclarant.

Although it is true that a Declaration of Intention is no longer necessary in the process of naturalization under the Immigration and Nationality Act of 1952, it was, however, the initial step in said process under the Nationality Act of 1940 which was the only naturalization statute in force when petitioner took his first papers.

The Nationality Act of 1940 contained a saving clause, Section 347(a), Title 8 U.S.C.A. § 747(a), which was not as broad as the saving clause contained in the Nationality Act of 1952, Sec. 405(a), Title 8 U.S.C.A. § 1101 note.

The terms "status", "condition", "right in the process of acquisition", "liability", "obligation", "rights" did not appear in the former, while they were specifically added to the latter.

Construing the saving clause of the Nationality Act of 1940, the Court of Appeals for the Second Circuit held that the provisions thereof did not cover "a mere *condition,* unattended by any affirmative action by the alien or by anyone else." (Emphasis supplied.)

United States ex rel. Aberasturi v. Cain, 2 Cir., 147 F.2d 449, 452.

The term "condition" was one of the terms not appearing in the saving clause of the Nationality Act of 1940, there construed, but which was later specifically included in the saving clause of the Immigration and Nationality Act of 1952.

No doubt Judge Clark's dissenting opinion in the above case had much to do with the inclusion of said term in the latter act to avoid the narrow interpretation given to the saving clause of the former act in the majority opinion in said case.

Four years later, the Court of Appeals for the District of Columbia was called upon to construe the same saving clause of the 1940 Act, and in failing to agree with the holding of the Court of Appeals for the Second Circuit in United States ex rel. Aberasturi v. Cain, supra, it held that, although not specifically included in its language, said "saving clause must have referred to *rights in process of acquisition.*" (Emphasis supplied.) Bertoldi v. McGrath, 86 U.S.App.D.C. 1, 178 F.2d 977, 979.

It is again significant that the phrase "rights in process of acquisition" which did not appear in the saving clause of the 1940 Act was later specifically included in the saving clause of the 1952 Act.

No doubt Congress, in adding said phrase to the saving clause of the Immigration and Nationality Act of 1952, gave considerable weight to the above decision, and had this, as well as Judge Clark's dissenting opinion in the United States ex rel. Aberasturi v. Cain case, supra, in mind, for including in the language of said clause the other terms to which reference has been made hereinabove and which do not appear in the saving clause of the 1940 Act.

The record in this case shows, and the government does not deny, that the petitioner falls under several of the situations contemplated in the saving clause of the 1952 Act, which, as above stated is much broader than that of the 1940 Act. For instance:

(a) He took out his first papers, i. e. signed and had issued to him his Declaration of Intention on April 16, 1948 and relied and rested on it to comply with the further requirements of the Nationality Act of 1940, then in full force and effect, and which, under the holding of the Court in Petition of Sproule, supra, was the first step in the process (proceedings) for naturalization, acquiring thereby an inchoate nationality and certain rights flowing therefrom. It cannot be denied that said Declaration of Intention and the proceeding initiated thereby were valid at the time the Immigration and Nationality Act of 1952 went into effect and, were it not for the enactment of this Act, would have ripened into naturalization upon petitioner's compliance with all the other requirements of the 1940 Act (which is conceded) and upon his subsequent filing of the petition for naturalization barely four months after the effective date of the 1952 Act.

(b) The proceedings for his naturalization had been long initiated and brought when the 1952 Act went into effect.

(c) He enjoyed at the time a status, condition and right in the process of acquisition, the existence of which cannot be denied.

The saving clause of the 1952 Act directs that nothing contained in said Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any such declaration of intention or proceeding; or to affect any proceedings brought, or any status, condition, right in process of acquisition, act, thing or matter such as those done, existing and enjoyed by petitioner, as heretofore discussed, at the time said act went into effect, and further provides that, as to all such proceedings, statutes (sic), conditions, rights, acts, things or matters, the statutes or parts of statutes repealed by said Act, are, unless otherwise specifically provided therein, thereby continued in force.

As regards the present controversy, the government concedes that there is nothing in said act specifically providing otherwise.

If, as the court said in Bertoldi v. McGrath, supra, the words of the saving clause in the 1940 Act, "were about as broad as language could be" in the matter of protecting the rights of the plaintiff therein, it can certainly be said here, with stronger force, that the same words

plus such others as "status", "condition", "rights in process of acquisition" now contained in the saving clause of the 1952 Act, and which did not figure in the saving clause there construed, are actually as broad as language could be in the sense of affording protection to the petitioner herein.

Paraphrasing the opinion in said case, it can be more aptly stated here that said words "evince a clear intent on the part of Congress that the new act should take effect prospectively." I still more strongly think that the 1952 Act means "that rights partly accrued under the old act should not be disturbed by the new one. The opposite view would be, to take an extreme illustration, that if," an alien had lawfully entered this country and had filed his declaration of intention 4 years and 364 days prior to the effective date of the Nationality Act of 1952 and complied prior thereto with all the requirements of the pre-existing act, "his slowly ripening citizenship would have been struck down."

I share the opinion "that Congress intended, by the saving clause, to prevent that sort of result."

The ruling in Bertoldi v. McGrath, supra, was subsequently accepted by the government. Cf. Acheson v. Albert, 90 U.S.App.D.C. 294, 195 F.2d 573, 575.

So far said ruling has not been reversed, modified or in any way changed or altered by the Supreme Court.

If the petitioner herein is not entitled to the protection of the saving clause in the 1952 Act in the sense hereinabove discussed, the said saving clause would afford no protection at all to anybody. Obviously, its construction cannot be limited as relating to rights which had been completely acquired at the time the act came into effect, as would be the case of a petition for naturalization meeting all the requirements of the 1940 Act and filed before the 1952 Act became effective, to which the government makes reference in its brief in connection with paragraph (b) of Sec. 405 of the 1952 Act, Title 8 U.S.C.A. § 1001 note, since said 1952 Act in no wise purported to destroy retroactively citizenship fully acquired. So it must exclusively be meant to deal with status, conditions, and rights in the process of acquisition such as those enjoyed by petitioner herein.

To hold otherwise would be to attribute to Congress the adoption of a meaningless provision of law, which in this Court's opinion is inconceivable.

The petition must be, therefore, granted and petitioner should be admitted to citizenship.

### Findings of Fact and Conclusions of Law

The petition filed in this case came on for hearing on August 17, 1953 and the Court, having considered the report filed herein on behalf of the Immigration and Naturalization Service of the Department of Justice of the United States by the designated Naturalization Examiner, Mr. David L. Scoles, which contains the "Findings of Fact, Conclusions of Law and Recommendation of the Designated Naturalization Examiner," as well as the evidence adduced at the hearing of the above-mentioned petition, and the whole record thereof and briefs of counsel, being duly advised in the premises and on the basis of the Opinion rendered herein on this date, now makes and adopts the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. The petitioner was lawfully admitted into the United States for permanent residence on March 7, 1948.

2. Pursuant to law, petitioner signed and had issued to him a Declaration of Intention under the Nationality Act of 1940, on April 16, 1948.

3. In reliance upon the law as it then prevailed, petitioner was absent from the United States for more than 6 months but less than one year, from and after the date of his legal entry, as follows:

April 22, 1948 to March 5, 1949

March 27, 1949 to March 7, 1950

March 19, 1950 to March 5, 1951

March 19, 1951 to February 24, 1952

and for less than six months from:

June 17, 1952 to June 21, 1952

January 5, 1953 to January 7, 1953

4. Petitioner, since 1939, has been continuously employed by Columbia Pictures International, an American business corporation, and his absences abroad were occasioned or necessary in connection with his employment by that corporation which was at all times engaged in the promotion of foreign trade and commerce of the United States.

5. Petitioner filed a petition for naturalization on April 24, 1953 as an alien and citizen of France.

6. Within the 5-year period immediately preceding the date of the filing of his petition, petitioner was physically present in the United States for a total of 16 months and absent from the United States under the circumstances hereinabove described, for a total of 44 months.

7. Petitioner did not in fact abandon his residence in the United States during such periods of absence.

8. According to the statement made by the representative of the Immigration and Naturalization Service at the hearing on this petition, and as conceded in the government's brief, petitioner has complied with all other requirements of the Immigration and Nationality Act, except that contained in Section 316(a) of the 1952 Act, Title 8 U.S.C.A. § 1427(a), which requires that a petitioner for naturalization be physically present within the United States for a period of not less than 2½ years.

9. By virtue of the facts hereinabove found, and pursuant to the provisions of the Saving Clause in the Immigration and Nationality Act of 1952, Section 405 (a) of the said Act, 8 U.S.C.A. § 1101 note, and of what Congress must be deemed to have intended thereby, the Court further finds that when the said Act went into effect on December 24, 1952 petitioner was holding a valid Declaration of Intention, was enjoying a status and condition and was in the process of acquiring a right, as such terms are used in the aforesaid Saving Clause.

## Conclusions of Law

1. Petitioner has met with all other requirements contained in the Immigration and Nationality Act of June 27, 1952, Title 8 U.S.C.A. Chapter 12, except that he has not been physically present within the United States for the 2½ year period required under said Act.

2. Unless the physical presence requirement contained in the above Act is to be applied to the petitioner in this case, petitioner is entitled to become a citizen of the United States under the petition which he has filed herein.

3. By virtue of the facts hereinabove found, and pursuant to the provisions of the Saving Clause in the Immigration and Nationality Act of 1952, Section 405(a) of the said Act, Title 8 U.S.C.A. § 1101 note, and of what Congress must be deemed to have intended thereby, the Court concludes that when the said Act went into effect, on December 24, 1952, petitioner was holding a valid Declaration of Intention, had initiated valid proceedings for his naturalization under the Nationality Act of 1940, and was enjoying a status, condition and right in the process of acquisition, as such terms are used in the Saving Clause hereinabove referred to, the validity of which were not affected by the enactment of the Immigration and Nationality Act of 1952, and as to which the provisions of the Nationality Act of 1940 remained in full force and effect, and he does not have to meet the physical presence requirement of Section 316(a) of the Immigration and Nationality Act of 1952, Title 8 U.S.C.A. § 1427(a) to be entitled to become a United States citizen.

4. Petitioner is entitled to be admitted to citizenship under the terms of both the Nationality Act of 1940 in effect up to December 24, 1952 and the Immigration and Nationality Act of 1952, approved June 27, 1952 in the light of the construction which the Court has given to Section 405(a) of the latter Act.

5. The petition for naturalization herein filed should be granted.

Judgment will be entered accordingly.