## SHOMBERG v. UNITED STATES.
### No. 134, Docket 22901.

United States Court of Appeals
Second Circuit.
Argued Dec. 17, 1953.
Decided Jan. 25, 1954.

Alan Y. Cole, Washington, D. C. (Max Schultz, New York City, on the brief), for petitioner-appellant.

Harold J. Raby, Asst. U. S. Atty., New York City (J. Edward Lumbard, U. S. Atty., New York City, and Max Blau and Lester Friedman, Attys., Immigration and Naturalization Service, New York City, on the brief), for appellee.

Before CLARK, FRANK, and HINCKS, Circuit Judges.

CLARK, Circuit Judge.

This appeal is taken from a denial of petitioner-appellant's motion to have his pending petition for naturalization brought on for final hearing before he is deported, and to have the deportation proceedings against him stayed until adjudication of his petition.

Petitioner filed his petition for naturalization on December 22, 1952. At that time, as at present, in so far as it appears, he was eligible for citizenship. Nor was he then liable for deportation. Two days later, on December 24, 1952, the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq.—enacted on June 27, 1952—went into effect. It created as a new ground for deportation the commission at any time of two felonies involving moral turpitude. §§ 241(a) (4), 241(d), 8 U.S.C.A. §§ 1251 (a) (4), 1251(d). Since petitioner had committed two such felonies, one in 1913 and one in 1915, he then became and is now liable for deportation, though this in terms does not affect his eligibility for citizenship. § 405(a, b), 8 U.S.C. § 1101 footnote, quoted below. On June 22, 1953, while his naturalization petition was still pending, deportation proceedings were instituted against him, based on the ground stated. He made his present motion in the district court on July 28, 1953, and now appeals from its denial by Judge Dimock in a reasoned opinion reported in D.C.S.D.N.Y., 115 F. Supp. 336.

█ Initially the government seeks dismissal of this order as not appealable, arguing that it does not come within the provisions of 28 U.S.C. § 1292(1) allowing appeal from the refusal of an injunction. But since here a stay is sought of proceedings pending elsewhere than in the current action, we think the order comes within the distinction often adverted to between the enjoining of other legal proceedings and a mere regulation of procedure within the action itself. See, e. g., International Nickel Co. v. Martin J. Barry, Inc., 4 Cir., 204 F. 2d 583, 585; Beckhardt v. National Power & Light Co., 2 Cir., 164 F.2d 199; Cover v. Schwartz, 2 Cir., 112 F. 2d 566. Hence the order is appealable. The supporting objections advanced by the government, such as that petitioner's application does not comply with the requirements for the issuance of temporary injunctions stated in Fed.Rules Civ.Proc. rule 65, 28 U.S.C.A., might suggest ground of error had the application been granted, but hardly touch the question of appealability.

█ Turning therefore to the merits we find that the Act of 1952 contains saving clauses, § 405, 8 U.S.C.A. § 1101 footnote, as follows:

"[Sec. 405.] (a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *

"(b) Except as otherwise specifically provided in title III, any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed."

It also has a priority provision, § 318, 8 U.S.C.A. § 1429:

"[Sec. 318.] * * * Notwithstanding the provisions of section 405(b) of this Act, and except as provided in sections 1438 and 1439 of this title no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act * * *."

Our problem is to find an harmonious interrelation of these provisions.

Petitioner argues that § 318 was intended to apply only to cases where naturalization proceedings were instituted subsequent to the effective date of the Act, and that its predecessor, § 329 (c) of the Nationality Act of 1940, which makes substantially the same provision, can apply only to deportation proceedings under that Act. He thus finds an interstice covering the narrow category of cases where naturalization was commenced under the old law and deportation is attempted under the new. To support his position he points out that when Congress added the proviso, "Notwithstanding the provisions of section 405(b)" in drafting § 318, it added the semicolon which separates the "final finding of deportability" from the pending deportation proceedings provisions of the section. From this he argues that the matter following the semicolon is not subject to the "Notwithstanding" clause and not removed from the impact of § 405(b). This close reading of the statute might be justified if there were any indications in the general scheme of the provisions or in legislative history to lend support. But in the absence thereof, we are not constrained to grant such substantive effect to so minor and ambiguous a punctuational variation.

. Next it is urged that since the "Notwithstanding" clause makes reference only to § 405(b), it necessarily leaves § 405(a) in effect; that § 405(a) decrees that "Nothing contained in this Act * * * shall be construed * * * to affect any * * * right in process of acquisition * * *"; that petitioner's naturalization is a "right in process of acquisition"; and that to allow deportation proceedings, not possible except under this Act, to suspend his right to a final hearing is to construe the Act to "affect" a "right in process of acquisition." At first blush this argument is persuasive, for naturalization has been held to be a "right," once the statutory qualifications have been met. Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 70 L.Ed. 738. But on closer inspection it is clear that the proffered reading is at the expense of several other provisions of the Act.

In the first place, to read § 405(a) so broadly as to remove petitioner's case from § 318 is to give it scope which makes § 405(b) entirely redundant. For if a petition for naturalization, once filed, confers a "right in process of acquisition" which may not in any way be "affected" by the Act, it must necessarily follow that the petition "shall be heard and determined in accordance with the requirements of law in effect when such petition was filed." Of course it is conceivable that Congress intended to sacrifice brevity to clarity and inserted § 405 (b) to make doubly clear what was already the law under § 405(a). But in this view the phrase "Notwithstanding the provisions of section 405(b)" must refer only to the clarifying subsection, and thus have no significance—a result which seems unlikely.

As noted above, the prior law contained a provision for priority of deportation proceedings which must be deemed a part of "the requirements of law in effect when [the instant] petition was filed." And there can be no doubt that § 318 provides the same priority in respect to proceedings commenced under the new act. If there were nothing more, petitioner's argument of an hiatus would be rather persuasive.

But § 318 makes specific reference to § 405(b), which by its terms applies only to cases within the alleged hiatus. The conclusion is inescapable that the urged construction does violence to the Act.

Furthermore, the "Notwithstanding" clause is not confined to § 318. It appears in several other provisions, e. g., § 313(a) 8 U.S.C.A. § 1424(a); § 315 (a), 8 U.S.C.A. § 1426(a); § 331(d), 8 U.S.C.A. § 1442(d), and each time raises the same problem. A single example will suffice. Section 331(d) provides for the termination of enemy alien status and goes on to declare that: "Notwithstanding the provisions of section 405 (b) of this Act, this subsection shall also apply to the case of any such alien whose petition for naturalization was filed prior to the effective date of this chapter and which is still pending on that date." Under the urged construction the filing of a petition would confer a "right in process of acquisition" which, notwithstanding the patent effort of Congress to extend the benefits of this section, could not under § 405(a) be "affected" thereby. Such interpretation is ridiculous.

The phrase "right in process of acquisition" appears in a context which if taken alone is obviously broad and quite embracing. It is not now before us for definition of its full sweep; but it would seem that petitions may be saved from various technical and procedural changes, and presumably rights "in process of acquisition" other than those stemming from a naturalization petition will be discovered. Compare generally Petition of Menasche, D.C.P.R., 115 F.Supp. 434. Be that as it may, in holding that its general terms must be read with the specific provisions of § 405(b) and do not override § 318 we are not denying it effect in the manner that a contrary construction would nullify other portions of the statute.

It is suggested that in thus concluding we are reading the instant case out of

§ 405(a) by implication in contravention of the section's mandate that it apply "unless otherwise *specifically* provided." (Emphasis supplied.) On the contrary, we have followed merely the time-honored precept of reading a statute as a whole. Nor is it significant that the draftsman of § 330(b), 8 U.S. C.A. § 1441(b), in providing a limited saving clause, expressly leaves § 318 intact. The draftsman there was faced with a narrow problem, and the impact of all related sections was immediately foreseeable.

If the conclusion thus made inevitable appears harsh, the decision and responsibility is that of Congress, which has disclosed its general and over-all intent in unmistakable terms. It has made the new ground of deportability of 8 U.S. C.A. § 1251(d), supra, clearly applicable to aliens entering or facts occurring prior to June 27, 1952; and its retroactivity has been recognized and upheld. U. S. ex rel. Nukk v. District Director of Immigration & Naturalization, 2 Cir., 205 F.2d 242 and cases cited 243, note 1. To allow the anomaly of an apparent try for citizenship by such deportable persons who had the foresight or the accident of seeking citizenship during the brief period between enactment and effective date of the new Act is to make mercy strange and fortuitous indeed. The interpretation here stated has at least the virtue of promoting consistency of treatment of the aliens.

Order affirmed.

FRANK, Circuit Judge (concurring).

My colleagues say that the conclusion they reach is "inescapable," and that any other interpretation of the statute "is ridiculous." My doubts are too strong to allow me to join in such strong language. These doubts do not stem from petitioner's attempt at a thorough-going semicolonization of § 318; for punctuation should play a small role in statutory construction.[1] My doubts are provoked by the following:

---

1. Cf. Johnson, J., in United States v. Palmer. 3 Wheat. 610, 636, 4 L.Ed. 471,

that men's lives should not "depend upon a comma."

Section 318 specifically mentions § 405(b) as the sole part of § 405 which is to be inoperative when it clashes with § 318. This reference to clause (b) discloses a selective purpose, *i. e.*, not to refer to § 405(a). Moreover, § 405(a) by its express terms provides, "Nothing contained in this Act, *unless otherwise specifically provided therein*, shall be construed * * * to affect any * * * right in process of acquisition * * *; but as to all such * · * * rights * * * the statutes or parts of statutes repealed by this Act are, *unless otherwise specifically provided therein*, hereby continued in force and effect. * * * " [2] It would seem, then, that to apply § 318 to "rights in process of acquisition" is exactly what both §§ 318 and 405(a) deliberately said we must not do, since such an application not only (1) disregards the explicit and selective reference in § 318 to § 405(b) but also (2), in reading § 318 into § 405(a) by mere implication, disregards the words in § 405(a) "unless specifically provided therein". It is noteworthy, too, that the phrase "a right in the process of acquisition" in § 405(a) is new; it was not in the savings clause of the 1949 Act; it thus appears that Congress intended to broaden this savings provision. See Petition of Menasche, D.C., 115 F.Supp. 434, 436.[3] And § 330(b),[4] a limited savings clause, contains striking evidence that, when Congress meant to have § 318 apply retroactively—*i. e.*, to naturalization petitions pending at the time the 1952 Act became effective—Congress plainly said so and did not rely upon mere implication.

Despite these doubts, I concur, but with much hesitation. I concur only because I think the well-known dominant purpose of the chief sponsors of the Act was to ensure the deportation of persons like petitioner.

---

2. Emphasis added.

3. That naturalization is a "right," see Tutun v. United States, 270 U.S. 568, 578, 46 S.Ct. 425, 70 L.Ed. 738.

4. It reads as follows: "Any person who was excepted from certain requirements of the naturalization laws under section 325 of the Nationality Act of 1940 prior to its amendment by the Act of September 23, 1950, and had filed a petition for naturalization under section 325 of the Nationality Act of 1940, may, if such petition was pending on September 23, 1950, and is still pending on the effective date of this Act, be naturalized upon compliance with the applicable provisions of the naturalization laws in effect upon the date such petition was filed: Provided, That any such person shall be subject to the provisions of section 313 and to those provisions of section 318 which relate to the prohibition against the naturalization of a person against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this or any other Act, or which relate to the prohibition against the final hearing on a petition for naturalization if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act."