**578**

UNITED STATES of America ex rel.
Dimitrios Georges ZACHARIAS,
Relator-Appellant,

v.

Edward J. SHAUGHNESSY, District Director of Immigration and Naturalization Service, Port of New York, Respondent-Appellee.

No. 187, Docket 23413.

United States Court of Appeals
Second Circuit.

Argued Feb. 9, 1955.

Decided April 13, 1955.

Jay Nicholas Long, New York City, for relator-appellant.

Harold J. Raby, Asst. U. S. Atty. for Southern Dist. of N. Y., New York City (J. Edward Lumbard, U. S. Atty., Maurice N. Nessen, Asst. U. S. Atty., and Lester Friedman, Atty., Immigration & Naturalization Service, U. S. Dept. of Justice, New York City, on the brief), for respondent-appellee.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and SMITH, District Judge.

CLARK, Chief Judge.

The main issue on this appeal is the eligibility for voluntary departure under 8 U.S.C. § 1254(e) of a concededly deportable alien seaman. Both the Board of Immigration Appeals and the district court have denied this privilege as a matter of law because of relator Zacharias' lack of the good moral character requisite under the Immigration and Nationality Act of 1952, 8 U.S.C. § 1101(f) (2). Zacharias admitted having sexual relations with his present wife several months before she obtained her divorce from a prior husband. Under the 1952 definition of good moral character, anyone guilty of adultery is automatically excluded. While Zacharias denies that his conduct constitutes adultery, the main focus of his appeal is directed to the inapplicability of the 1952 Act to his case, since, under the prior legislation, adultery would not be conclusive of lack of good moral character. Petitions of Rudder, 2 Cir., 159 F.2d 695; and see Application of Murra, 7 Cir., 178 F.2d 670. He argues that the savings clause in § 405 of the 1952 Act, 8 U.S.C. § 1101 note, should govern to make the prior law applicable because of a petition for an immigration visa filed on his behalf more than three months before December 24, 1952, when the new legislation went into effect. His writ of habeas corpus having been discharged by the district court, he now appeals to this court.

The essential facts are not in dispute. Zacharias, a Greek citizen by naturalization, entered the United States on shore leave from the S.S. "Burco Trader" on December 16, 1951, and has remained here ever since. Hence he is clearly deportable under whatever immigration act may apply. See 8 U.S.C. § 215 (1946 Ed.) and 8 U.S.C. § 1251(a) (9) (1952 Ed.). He married his present wife, Eugenia Chiamis, a native-born American citizen, on August 13, 1952, some four months after they had begun to live together, and some two and a half months after her divorce. On September 3, 1952, Mrs. Zacharias filed the preliminary papers for an immigration visa for her husband, so that he might legally re-enter the country from Canada. This application was approved by the New York office of the Immigration and Naturalization Service on January 5, 1953, and forwarded by them to Montreal. There no further action was taken until October 6, 1954—after deportation had been ordered—when the application was denied on the ground that Zacharias was ineligible for a visa under 8 U.S.C. § 1182(a) (28) (C). This denial was presumably based on his brief affiliation, then necessary for earning a livelihood as a Greek seaman, with a Greek labor union, the Federation of Greek Maritime Unions, which was subsequently labeled a Communist front. The facts relating to this membership were fully explored in the present deportation proceedings, and no particular weight was apparently ascribed to them.

In the interim between the filing of the visa application and its denial, despite a request for pre-examination and voluntary departure pursuant thereto on April 10, 1953, the deportation proceedings now before us were initiated and concluded on the administrative level. On June 23, 1954, the Board of Immigration Appeals affirmed Zacharias' statutory ineligibility for voluntary departure because of adultery. The Board considered and rejected his contention that the 1952 Act did not apply to his case.

■ We can dispose quickly of Zacharias' contention that his admitted sexual relations with Eugenia while she was still married to another man did not constitute adultery. Under both the law of the state where the acts occurred, see N.Y. Penal Law, McK.Consol.Laws, c. 40, § 100, and the general common-law definition, Zacharias is guilty of adultery, even though he himself was single at the time. Miller, Handbook of Criminal Law § 136 (1934); 2 C.J.S., Adultery, §§ 1, 2, 3, 4, pages 472–474. There is no reason to suppose that Congress in enacting 8 U.S.C. § 1101(f) (2) intended to adopt the contrary definition of ecclesiastic law which is the rule in only a minority of states.

We turn then to the crucial question of the applicability of 8 U.S.C. § 1101(f) (2) to Zacharias. Did the filing of the petition for issuance of an immigration visa by his American wife give Zacharias "any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing," at the time the 1952 Act went into effect? If so, under § 405(a) of that legislation, 8 U.S.C. § 1101 note, his case must be governed by prior statutes unless otherwise specifically provided.

The Supreme Court has recently had occasion to discuss the scope of § 405 (a). Shomberg v. United States, 75 S.Ct. 509; United States v. Menasche, 75 S.Ct. 513. It stressed that the present version of § 405 (a) was an extension of former savings clauses embodying "congression-al acceptance of the principle that the statutory status quo was to continue even as to rights not fully matured." 75 S.Ct. 518. The Court further said: "The whole development of this general savings clause, its predecessors accompanying each of the recent codifications in the field of immigration and naturalization, manifests a well-established congressional policy not to strip aliens of advantages gained under prior laws. The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress." 75 S.Ct. 518.

In United States v. Menasche, supra, it was held—affirming the reasoned decisions in Petition of Menasche, D.C. Puerto Rico, 115 F.Supp. 434, and United States v. Menasche, 1 Cir., 210 F.2d 809 —that a preliminary petition for naturalization should be given effect despite the petitioner's absence from the country, which would have been fatal to his application for citizenship under the 1952 Act. The Court's willingness to recognize inchoate rights, expressed also in its disapproval of the majority decision of this court in United States ex rel. Aberasturi v. Cain, 2 Cir., 147 F.2d 449, and approval of the contrary decision in Bertoldi v. McGrath, 86 U.S.App.D.C. 1, 178 F.2d 977, strongly suggests that here the earlier law must be given effect. Shomberg v. United States, supra, re-enforces this conclusion. There the question was whether a naturalization petition filed two days before the effective date of the new act should take precedence over and stay subsequently instituted deportation proceedings. Under the prior law the petitioner had not been deportable. The Court expressly stated that, absent a specific provision to the contrary, the petitioner's rights were protected by § 405 (a), but found such a specific exception in § 318, 8 U.S.C. § 1429, as had the court below. Shomberg v. United States, 2 Cir., 210 F.2d 82, affirming Application of Shomberg, D.C.S.D.N.Y., 115 F.Supp. 336.

We conclude that the preliminary application for the visa in September, 1952, was sufficient to bring Zacharias within § 405(a). This application was the first step in his effort to attain a legal status in this country. The government contends that the form signed by Mrs. Zacharias was no more than a declaration of Zacharias' status as the husband of an American citizen. That this position is untenable is demonstrated by the fact that this form was approved by the New York Immigration Office and then sent on by it to Montreal for further action there. The consul's eventual response thereto indicates that he considered it to be a step in the acquisition of a visa. Zacharias' subsequent request for voluntary departure and pre-examination on April 10, 1953, was squarely based on this visa application and should be considered to relate back to it. Similarly the present request for this same privilege should relate back and thus fall within the savings clause.

The government seeks to undermine the force of this argument by reference to an interview of February 3, 1953, in which Zacharias disclaimed his intention of applying for voluntary departure. This was a statement taken from him, a cook and counterman, without the assistance of a lawyer, in which he, understandably enough, did not seem fully familiar with the legal terms being used. It is significant that despite his answer of "No" to the question, "Do you want to apply for the privilege of voluntary departure at your own expense?" when later asked, "Have you submitted an application for voluntary departure and preexamination to this Service?" he replied, "No, I have written to the American Consul in Montreal regarding an Immigration visa, but have received no reply." Thus he was clearly giving the Immigration Service notice of his current efforts, which he was in no way abandoning and which he in fact implemented, as we have seen, by an actual application for voluntary departure and pre-examination two months later. That this also was the government's understanding of what occurred is evident from its delay in following up the February 3 interview. No further proceedings were held until more than a year later, April 21, 1954, when the hearing before the Special Inquiry Officer took place. It was this officer's decision that Zacharias was ineligible for voluntary departure which was upheld by the Board of Immigration Appeals on June 23, 1954.

Since we hold that Zacharias on December 24, 1952, had a status, condition, right in process of acquisition, act, thing, or matter then done or existing, this decision of the Board and its affirmance by the district court are in error unless some other specific provision of the 1952 Act takes this case out of the scope of § 405(a). We find no such exception here. It is true that the general deportability section, 8 U.S.C. § 1251, is specifically made applicable to cases arising before enactment of the new statute; but Zacharias does not contest his deportability. The relevant sections governing voluntary departure and defining good moral character, 8 U.S.C. §§ 1254(e) and 1101(f) (2), say nothing about retroactive application. This case, therefore, like United States v. Menasche, supra, should be governed by the pre-1952 law. Zacharias is entitled to a new hearing for the exercise of discretion by the Board of Immigration Appeals. His writ of habeas corpus, staying his deportation meanwhile, must be granted.

The decision of the district court is reversed and the case remanded for the granting of the relator's writ of habeas corpus.