### Petition of PRINGLE.
### No. 2351.

United States District Court
E. D. Virginia, Alexandria Division.
Nov. 3, 1953.

Seymour Spelman, Alexandria, Va., and David Carliner, Washington, D. C., for petitioner.

William Kilmain, Bethesda, Md., for Immigration and Naturalization Service.

BRYAN, District Judge.

Narrowed, the inquiry here is whether the filing of an administrative appli-

cation for naturalization with the Immigration and Naturalization Service prior to the expiration of the Nationality Act of 1940 [1] preserves for the applicant, through the savings clauses of the Immigration and Nationality Act [2], the right to have his petition for naturalization heard and determined in accordance with the 1940 Act, though filed after the latter's repeal by the other Act. The Service has denied any such significance to the preliminary application and has recommended against the instant petition, predicated exclusively on the 1940 Act.

A quota immigrant, Robert Gordon Bell Pringle was admitted to the United States in 1941 for permanent residence. At that time he was married to a native born United States citizen. Except for short return visits, he was absent from this country from 1944 until November 12, 1951, and his employment did not warrant exception of his absences foreign from the continuous residence conditions of the 1940 Nationality Act.[3]

On October 7, 1952, as an accommodation to the petitioner, the Service accepted from him a preliminary application on Form N 400. This application was evidently made in anticipation of a petition for naturalization, to be filed immediately after the completion of residence of a year and a day following his return to the United States. Anticipated, too, was the cessation of the Nationality Act of 1940, and the accession of the new Act, on December 24, 1952. Pringle desired to gain the benefit of section 311 of the Nationality Act of 1940. The Service concedes that his residence of one year and one day would qualify him under that section; the petitioner concedes that, on the residence score, he was not then, nor indeed on the date (May 7, 1953) he filed his petition for citizenship, eligible for naturalization under the Immigration and Nationality Act.

Despite the expedition of the Service, the number of cases then pending made it impossible to process all of them before the death of the old Act. Pringle's was among those not administratively completed before December 24, but it was concluded thereafter. On May 7, 1953 he filed his petition for naturalization in this Court; it was heard October 19. Petitioner insists that the filing of the preliminary application began his citizenship proceedings, and that the force of the savings clauses of the Immigration and Nationality Act was thereby evoked and maintained for him all the privileges which had been his under the 1940 Act, including its residence provisions.

As now pertinent, the savings clauses of the Immigration and Nationality Act declare:

> Sec. 405. "(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, (sic) statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes re-

1. 8 U.S.C.A. § 501 et seq.

2. Public Law 414, 82d Congress, c. 477, 2d Session, passed June 27, 1952, effective December 24, 1952, 8 U.S.C.A. § 1101 et seq.

3. 8 U.S.C.A. § 707 (b).

pealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect.

\* \* \*

"(b) Except as otherwise specifically provided in title III, any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed." 8 U.S.C.A. § 1101 note.

■ Petitioner urges that the preliminary application on Form N 400 was such a "document or proceeding"; that the submission and receipt of it gave him a "status" or "right in process of acquisition" under the aegis of section 405 (a); and, more, the residence requirements of the 1940 Act were "continued in force and effect" as to him despite the repeal of the 1940 Act. The Court is also of that mind.

The Service's regulations demanded, "Each prospective petitioner for naturalization shall be required to fill out properly and sign preliminary application Form N–400 and submit it, \* \* \* to the immigration and naturalization office".[4] They also said, "Following the submission of the preliminary Form N 400, as described in 370.1, the applicant will be notified when and where to appear to file the petition for naturalization."[5] No petition for naturalization would be considered by the Service until the preliminary application was submitted. Consequently, in regulation and reality the application was an essential of the naturalization proceeding. It was so serious a step in naturalization that the laws of perjury have been held to safeguard its sanctity.[6] The Congress has confirmed its importance, prescribing it in the Immigration and Nationality Act as a prerequisite to a petition for naturalization.[7]

The filing of N 400 was not a remote, preparatory gesture towards citizenship; it was a premise of the petition. It secured the privileges of the 1940 Act against repeal and extended them unimpaired for his subsequent enjoyment. This construction of the savings clauses is deemed consonant with their terminology and purpose.

■ Although subsection (b) of the savings clauses, supra, does affirmatively declare that the 1940 Act shall govern pending petitions, its implication is not strong enough to negative the equally plain intent of subsection (a)—that other and earlier steps towards naturalization should also preserve and project the provisions of the 1940 Act. Because their facts are so different from the present, the cases of Bertoldi v. McGrath, 1949, 86 U.S.App.D.C. 1, 178 F.2d 977 and U. S. ex rel. Aberasturi v. Cain, 1945, 2 Cir., 147 F.2d 449, cited by the parties as sustaining their respective positions, are scarcely precedent here.

■ The Service explains that administrative applications are filed in great numbers but only a small percentage of them are followed up. It suggests that the Congress did not wish to perpetuate the privileges of the 1940 Act not found in the new Act, and it did not intend the savings clauses to permit the prosecution, under the 1940 law, of every application on file December 24, 1952 whenever thereafter the applicant might desire to do so. But to this there is a ready response. The Congress could have stipulated a time for the termination of current proceedings, just as it did in the Nationality Act of 1940 in regard to pending petitions.[8] Omission of a limitation from the 1952 Act evinces a Congressional purpose not to curtail prior privileges.

The Court will adopt as its own the findings of fact made by the designated

---

4. 8 CFR 370.1

5. 8 CFR 370.2

6. U. S. v. Obermeier, 1950, 2 Cir., 186 F.2d 243.

7. Sec. 334(b).

8. 8 U.S.C.A. § 747(b).

examiner for the Immigration and Naturalization Service dated May 22, 1953. This memorandum will constitute its conclusions of law. For the reasons stated, the petition of Robert Gordon Bell Pringle for naturalization will be granted.