**In re JOCSON.**
**No. 13088.**

United States District Court
D. Hawaii.
Jan. 13, 1954.

Edward Berman, Honolulu, Hawaii, for petitioner.

John J. Kelleher, Designated Naturalization Examiner, Honolulu, Hawaii, for the Government.

WIIG, District Judge.

The petitioner, Ismael Bender Jocson, filed his petition for naturalization under Section 328 of the Immigration and Nationality Act, 8 U.S.C.A. § 1439, on April 9, 1953. The designated Naturalization Examiner recommended that the petition be denied on the ground the petitioner had failed to establish that he was lawfully admitted to the United States for permanent residence as required by Sections 318 and 328 of the Immigration and Nationality Act, 8 U.S. C.A. §§ 1429, 1439. Petitioner disagreed with the recommendation of the Naturalization Examiner and, upon hearing, documentary and oral evidence were adduced.

Petitioner is a national of the Republic of the Philippines, having been born in the Philippine Islands on May 5, 1926. He enlisted in the United States Navy at Manila, Philippine Islands, on June 24, 1946, and has served continuously in the Navy until the present time. Petitioner contends he is not bound to comply with the requirement of the new law that he must first be lawfully admitted to the United States for permanent residence. This contention is based upon his status and actions prior to December 24, 1952, when the new act became effective, and the provisions of the saving clause in Section 405(a), 8 U.S.C.A. § 1101 note.

On March 9, 1951, at the office of the Immigration and Naturalization Service in San Francisco, California, petitioner submitted his application on Form N-400, "Application for a Certificate of Arrival and Preliminary Form for Petition for Naturalization," which, generally speaking, is the first step in the process of acquiring American citizenship through naturalization for all classes of applicants. The law then in effect, Section 324 of the Nationality Act of 1940, 8 U.S.C.A. § 724, provided that a person such as the petitioner, who had served honorably at any time in the United States Navy for a period of three years or more, might be naturalized without having resided for a period of five years in the United States prior to the filing of his petition, and that no declaration of intention, no certificate of arrival, and no residence within the jurisdiction of the court should be required. This section also provided that a person such as petitioner might be naturalized immediately if the petitioner was at that time in the armed forces and had complied with other provisions which are not

**530**

material here. This section conferred upon aliens serving honorably in the armed forces rights and privileges not accorded to other aspirants for American citizenship. In a sense it may be said that section was in the nature of a bounty or reward to aliens because of their honorable service in the armed forces. The law did not require lawful admission for permanent residence as a prerequisite to naturalization.

The San Francisco office notified petitioner to appear to file his petition for naturalization on a specified date, but he was unable to do so because his ship had been ordered to Southern California. On June 30, 1951, he notified the San Francisco office of his transfer and requested that his records be sent to the Los Angeles office for further action on his application. When the latter office informed him of the setting of a new date for his examination, petitioner was confined in a Naval Hospital in San Diego, California. He advised the Los Angeles office of the reason for his failure to appear as requested, and on May 22, 1952, he asked that his records be transferred to San Diego.

Before any further action could be taken, petitioner left San Diego on June 16, 1952, on an emergency leave to the Philippine Islands. He returned to Pearl Harbor, Territory of Hawaii, on September 22, 1952, and learned that his ship would be in Hawaiian waters for an indefinite period. He then requested the San Diego office to have his records transferred to Honolulu, which request was complied with on December 5, 1952. Because of the fact that petitioner did not receive any notice from the Honolulu office, he again wrote to the San Diego office on January 17, 1953, and was advised his records had been sent to Honolulu and that he should apply in person to that office. Upon receipt of this notice, he filed his petition for naturalization as noted above and was examined on April 23, 1953. Petitioner stated he first learned in February 1953 that the Nationality Act of 1940 had been repealed as of December 24, 1952.

There is no question that if petitioner had filed his petition for naturalization on or prior to December 24, 1952, he would have complied with all the requirements for naturalization. The sole question, then, is whether his status and his actions prior to that date bring him within the provisions of the saving clause in Section 405(a), 8 U.S.C.A. § 1101 note.

This saving clause provides that nothing contained in the 1952 Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any document or proceeding or to affect any status, condition, or right in process of acquisition, existing upon the effective date of the Act, and further provides that as to all such proceedings, conditions, rights, acts, things or matters, the statutes or parts of statutes repealed by such Act are, unless otherwise specifically provided therein, continued in force and effect. It is apparent that the saving clause in the 1952 Act is broader than that contained in Section 347(a) of the Nationality Act of 1940, 8 U.S.C.A. § 747(a), for such terms as "status," "condition," and "rights in the process of acquisition," did not appear in the 1940 Act but were specifically added in Section 405(a). See Bertoldi v. McGrath, 86 U.S.App.D.C. 1, 178 F.2d 977.

When petitioner filed his preliminary form for petition for naturalization, form N-400, pursuant to Section 370.1 of the Regulations of the Nationality Act of 1940, 8 C.F.R. § 370.1, the initial proceedings were commenced under the authority of the law then in effect, whereby he intended to acquire American citizenship. Both petitioner and the Immigration and Naturalization Service treated the application as the first step toward naturalization. It is the Court's view that, by virtue of petitioner's service in the United States Navy and his filing of this application, he acquired a "status," "condition," and "rights in process of acquisition," and that a proceeding was commenced under the Nationality Act of 1940. It was conceded by the Government at the hearing that in

the year 1951 the normal procedure for naturalization of aliens in the armed forces was commenced by the filing of form N-400. When, as shown by the evidence in this case, the Immigration and Naturalization Service is ready to receive the final petition for naturalization, the applicant is so advised. He is called to appear with two witnesses at the field office of the Service, where he is submitted to preliminary interrogation, and the filing of the petition follows. After favorable review by the Service, the last step in the naturalization procedure, usually after a minimum waiting period of thirty days, is the final hearing in a naturalization court and the taking of the oath of allegiance to the United States.

The evidence clearly shows that petitioner did everything within his power to comply with all the requirements of the Nationality Act of 1940. His service in the Navy during a critical period prevented him from going ashore for the purpose of attending to necessary procedures which would have resulted in his naturalization prior to December 24, 1952. To now attach an additional requirement that petitioner must establish that he was lawfully admitted to the United States for permanent residence before he may be naturalized appears to be contrary to the intendment of Congress in legislation enacted for the benefit of a loyal alien who has voluntarily aided our country in its military operations, and by so doing was unable to capture the prize of citizenship under the Nationality Act of 1940. In Petition of Menasche, D.C.Puerto Rico, 115 F.Supp. 434, 438, petitioner filed his declaration of intention to become a citizen on April 16, 1948, under the Nationality Act of 1940. On April 24, 1953, he filed a petition for naturalization. The sole question at issue upon the hearing was whether petitioner was bound to comply with the physical presence requirement of Section 316(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1427(a). The Court said:

" * * * pursuant to the provisions of the Saving Clause in the Immigration and Nationality Act of 1952, Section 405(a) of the said Act, Title 8 U.S.C.A. § 1101 note, and of what Congress must be deemed to have intended thereby, the Court concludes that when the said Act went into effect, on December 24, 1952, petitioner was holding a valid Declaration of Intention, had initiated valid proceedings for his naturalization under the Nationality Act of 1940, and was enjoying a status, condition and right in the process of acquisition, as such terms are used in the Saving Clause hereinabove referred to, the validity of which were not affected by the enactment of the Immigration and Nationality Act of 1952, and as to which the provisions of the Nationality Act of 1940 remained in full force and effect, and he does not have to meet the physical presence requirement of Section 316(a) of the Immigration and Nationality Act of 1952, Title 8 U.S.C.A. § 1427(a) to be entitled to become a United States citizen."

The Court is of the opinion and finds that petitioner acquired "status," "condition," and "rights in process of acquisition" prior to December 24, 1952, which were secured to him in the saving clause of the 1952 Act, that he is entitled to the protection of the saving clause in the "proceeding" commenced by him on March 9, 1951, and he is not required to establish that he was lawfully admitted to the United States for permanent residence as required by the Immigration and Nationality Act.

The petition for naturalization herein should be granted. Judgment will be entered accordingly.