**Petition for NATURALIZATION of Pandelis CARNAVAS.**

United States District Court
S. D. New York.
Sept. 23, 1957.

Leo E. Ypsilanti, New York City, for petitioner. Edward Kroin, New York City, of counsel.

Howard I. Cohen, New York City, Naturalization Examiner.

FREDERICK van PELT BRYAN, District Judge.

This is a petition for naturalization by a former citizen of the United States who allegedly forfeited his citizenship under Section 401(c) of the Nationality Act of 1940, 8 U.S.C. § 801(c), as a result of his service in the Greek Navy during World War II.[1]

The principal question presented is whether petitioner's eligibility for naturalization is to be determined with reference to the provisions of Section 323 of the Nationality Act of 1940, as amended, 8 U.S.C. § 723, the prevailing law at the time petitioner filed a preliminary application for naturalization on Immigration Form N-400, or whether it is to be governed by Section 327 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1438, the present law, which would clearly render him ineligible for naturalization at this time.[2] The answer to this question is dependent on an interpretation of the so-called savings clause (Section 405(a)) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 note, which preserved certain rights that had accrued prior to the effective data of the 1952 Act.

Carnavas was born in Alexandria, Egypt, on August 16, 1925. He was a citizen of the United States at birth, under Rev.Stat. § 1993 (2d ed. 1878), by virtue of his father's naturalization here in December 1924. He was also considered a citizen of Greece under the laws of that country because both his parents had been Greek citizens prior to his father's naturalization in the United States.

Petitioner lived in Alexandria, Egypt, during his youth and up to the time he entered the Greek Navy on July 20, 1944. The circumstances attending his entry into the Greek Navy are in dispute, petitioner alleging that such service was forced upon him and that he resisted his induction to the best of his ability, while the Immigration Service has found that he voluntarily enlisted. I shall have more to say about this factual dispute later.

Petitioner was discharged from the Greek Navy on September 29, 1945 and returned to Alexandria, Egypt. He subsequently obtained employment as a seaman, and on June 18, 1952 arrived in the United States as a crewman on the vessel S. S. Cimon. He was granted the customary twenty-nine day permit for alien seamen and entered this country for the first time. Upon expiration of his permit, petitioner did not return to his

---

1. Section 401 provided:

   "A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

   *   *   *   *   *   *

   "(c) Entering, or serving in, the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state; * * * ",

   Now § 8 U.S.C.A. § 1481(a).

2. Section 323 of the Nationality Act of 1940 provided an accelerated method of naturalization for persons who had lost their citizenship by virtue of their service in the Armed Forces of one of our wartime allies. The only requirements were that such person intend to reside permanently in the United States and that he take a prescribed oath. Neither a certificate of arrival nor a declaration of intention was required. See, also, Section 317(c), 8 U.S.C. § 717(c) and DiIorio v. Nicolls, 1 Cir., 182 F.2d 836. The 1952 Act added the requirement of lawful admission for permanent residence. Petitioner is ineligible under the latter, because he entered the United States on a temporary permit for alien seamen.

ship but remained in the United States, establishing residence in New York City.

In October 1952 he filed a preliminary "Application to File Petition for Naturalization" (Form N-400) pursuant to the regulations of the Immigration and Naturalization Service, 8 C.F.R. § 370.1 (1949 ed.). In this application petitioner claimed that he was still a citizen of the United States, but that since his Greek naval service had raised a doubt as to his status, he was making application for repatriation under Section 323 of the Nationality Act of 1940. The application was not indexed by the Immigration and Naturalization Service until January 20, 1953. By that time Section 323 of the 1940 Act had been repealed by the Immigration and Nationality Act of 1952, which had become effective on December 24, 1952. The Immigration and Naturalization Service, considering petitioner ineligible for naturalization, took no further action on his application.

Subsequently petitioner filed an application for a certificate of derivative citizenship under Section 341 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1452. This application was denied by the District Director on March 16, 1954 on the ground that petitioner had lost his citizenship by virtue of his service in the Greek Navy. The decision was affirmed by the Acting Regional Director on August 9, 1955.

On December 14, 1955 petitioner commenced an action for a declaratory judgment in this court in which he requested the following relief in the alternative: (1) A judgment that he is a citizen of the United States because his service in the Greek Navy was under duress, or (2) a judgment declaring him to be entitled to favorable action on his October 1952 "Application to File Petition for Naturalization" (Form N-400). Petitioner subsequently moved for summary judgment but the motion has been adjourned indefinitely for the purpose of giving him the opportunity to prosecute his October 1952 application for naturalization in the instant proceeding.

■  Petitioner's claim that he entered the Greek Navy under duress is relevant only to the issue of whether he was in fact expatriated under Section 401(c) of the Nationality Act of 1940. The rule is clear that one could not be expatriated under that section if the military service was involuntary. Acheson v. Maenza, 92 U.S.App.D.C. 85, 202 F.2d 453; Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860. But the issue of whether petitioner was or was not expatriated is not now before me, since there is another action pending in this district in which that very question has been raised, which is being held in abeyance for the sole purpose of giving petitioner the opportunity to prosecute this naturalization petition. I shall therefore assume, for the purposes of this proceeding, that petitioner is one who has lost his citizenship under Section 401(c) of the Nationality Act of 1940 by virtue of his service in the Greek Navy, and shall determine his rights accordingly.

The petitioner claims that his eligibility for naturalization must be determined under Section 323 of the Nationality Act of 1940, as amended, rather than under the analogous, but more restrictive Section 327 of the Immigration and Nationality Act of 1952. He argues that since he had commenced naturalization proceedings prior to December 24, 1952, the effective date of the Immigration and Nationality Act, by filing Form N-400, his eligibility for naturalization under Section 323 of the Nationality Act of 1940 was preserved by the savings clause (Section 405(a)) of the Immigration and Nationality Act of 1952.

Section 405(a) provides:

"Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which

shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [*sic*], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * * "

■ The question for determination, therefore, is whether the petitioner acquired any "status", "condition" or "right in process of acquisition" when he filed his preliminary application on Form N-400 in October 1952 or whether this form constituted a "document" or initiated a "proceeding" within the meaning of Section 405(a) of the Immigration and Nationality Act of 1952. An affirmative answer to any of these questions would preserve petitioner's rights under Section 323 of the Nationality Act of 1940.

The Supreme Court has considered the effect of Section 405(a) in United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 514, 99 L.Ed. 615. In that case, a declaration of intention had been filed prior to the effective date of the Immigration and Nationality Act but the petition for naturalization was not filed until after such date. The petitioner in Menasche was clearly eligible for naturalization under the 1940 Act but did not meet the physical presence requirements of the 1952 statute. The court held that the savings clause of the 1952 Act (Section 405(a)) preserved to petitioner his rights under the 1940 Act. In arriving at this decision the court relied not only on the express wording of 405(a) that the 1952 Act should not be " * * * construed to affect the validity of any declaration of intention * *

which shall be valid at the time this Act shall take effect * * * " but also on an analysis of the purposes of the savings clauses in this and former immigration statutes. Mr. Justice Clark, speaking for the court, reasoned that the addition of the terms "status", "condition", "right in process of acquisition", "liability" and "obligation" in the 1952 savings clause indicated a "congressional acceptance of the principle that the statutory *status quo* was to continue even as to rights not fully matured", and that the "consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress." Id. 348 U.S. at page 535, 75 S.Ct. at page 515.

In Petition of Pringle, D.C.E.D.Va., 122 F.Supp. 90, 92, affirmed 4 Cir., 212 F.2d 878, the petitioner had filed a preliminary application on Form N-400 in October 1952, two months prior to the effective date of the 1952 Act, as in the case at bar. The petition for naturalization was not filed until May 1953. It was held that the filing of the preliminary application on Form N-400 commenced his citizenship proceedings and that the savings clause of the 1952 statute preserved petitioner's rights under the 1940 Act. The court reasoned that the preliminary application was a "document or proceeding" and that the submission of it gave petitioner a "status" or "right in process of acquisition". The same result, on a similar state of facts, was reached by the district court in the case of In re Jocson, D.C.D.Hawaii, 117 F. Supp. 528, where petitioner prevailed by virtue of having filed Form N-400 prior to December 24, 1952, the effective date of the Immigration and Nationality Act of 1952. The Supreme Court in Menasche cited with approval the Pringle and Jocson cases and their recognition that Congress, in enacting 405(a), intended to preserve "rights accruing in the pre-petition stages of the naturalization process." United States v. Menas-

che, supra, 348 U.S. at page 538, 75 S.Ct. at page 519. Since petitioner Carnavas, by filing Form N-400, took the very step which was held to have preserved the petitioners' rights in Pringle and Jocson, I have no doubt that his rights too, were preserved by Section 405(a).

The filing of Form N-400 is an essential part of the naturalization process. The Service regulations promulgated under the 1940 Act provided explicitly that every prospective petitioner for naturalization must first file a preliminary application on Form N-400. (See 8 C.F.R. § 370.1 [1949 ed.]). To hold, therefore, that such filing did not commence a "proceeding" for naturalization or did not give petitioner a "status", "condition", or "right in process of acquisition", would be to ignore the obvious Congressional intent, so clearly apparent from the plain meaning of the terms used. See, also, United States ex rel. Zacharias v. Shaughnessy, 2 Cir., 221 F.2d 578; In re Pauschert's Petition, D.C.S.D.N.Y., 140 F.Supp. 485; Petition of F—G—, D.C.S.D.N.Y., 137 F. Supp. 782; Foradis v. Brownell, D.C. Cir., 242 F.2d 218; Aure v. United States, 9 Cir., 225 F.2d 88.

It should also be pointed out that in filing Form N-400 petitioner took the only affirmative step possible under the Service regulations. The regulations, at 8 C.F.R. § 370.2, (1949 ed.), provided that:

"Following the submission of the preliminary Form N-400 * * * the applicant will be notified when and where to appear to file the petition for naturalization."

It is admitted by the Service that petitioner filed the N-400 more than a month prior to the effective date of the Immigration and Nationality Act of 1952. Yet the Service took no action on his application, and failed to notify him to appear for the purpose of filing his petition prior to the effective date of the Act. This, despite the fact that the Immigration and Nationality Act of 1952 had been enacted on June 27th of that year and its effective date was well known. It would be a harsh result, indeed, to penalize this petitioner under the circumstances stated.

I hold that petitioner's eligibility for naturalization must be determined under Section 323 of the Nationality Act of 1940, as amended.

■ It remains to be decided whether petitioner is eligible for naturalization under that section.[3] The answer would clearly be in the affirmative were it not for the fact that petitioner, having remained in the United States after the expiration of a twenty-nine day seaman's permit, was illegally in this country at the time he filed his preliminary application for naturalization and at all times thereafter. The Designated Naturalization Examiner, in recommending denial of this petition, has stated that petitioner's "illegal physical presence could not mature into a right to naturalization." While legal physical presence may be a requisite to naturalization under Section 327 of the Immigration and Nationality Act of 1952, no such requirement appeared in Section 323 of the 1940 Act. Indeed, Section 323 did not require any presence in the United States at all. It provided that a person who had served in the military forces of an allied country during World War II could be repatriated by taking the prescribed oath before

3. Section 323, the Nationality Act of 1940, as amended by Act of April 2, 1942, c. 208, 56 Stat. 198, provided:
"A person who, while a citizen of the United States and during the first or second World War, entered the military or naval service of any country at war with a country with which the United States was or is at war, who has lost citizenship of the United States * * * by reason of entering or serving in such armed forces, and who intends to reside permanently in the United States, may be naturalized by taking before any naturalization court * * * [a prescribed oath]. Any such person who has lost citizenship of the United States during the second World War may, if he so desires, be naturalized by taking, before any diplomatic or consular officer of the United States abroad [such oath] * * *".

a naturalization court or "* * * before any diplomatic or consular officer of the United States abroad * * *."[4] It is apparent, therefore, that the question of whether petitioner was in the United States legally, illegally, or not at all, cannot affect his rights under Section 323 of the Nationality Act of 1940.

The petition is granted.

See, also, 141 F.Supp. 418.