**Matter of the Petition of Andreas VACONTIOS.**

United States District Court
S. D. New York.
Sept. 30, 1957.

Joshua S. Koenigsberg, New York City, for petitioner.

Howard I. Cohen, New York City, Naturalization Examiner for Immigration and Naturalization Service.

FREDERICK Van PELT BRYAN, District Judge.

This is a petition for naturalization, under Section 330(a) (2) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1441(a), by an alien seaman who has never been admitted to the United States for permanent residence.

The question presented is whether petitioner, having failed to file a petition for naturalization within one year from the effective date of the Immigration and Nationality Act of 1952, as provided by Section 330(a) (2), is nevertheless eligible for naturalization under that section by virtue of having filed a preliminary "Application to File Petition for Naturalization" (Form N–400) during the prescribed one year period.

Petitioner Vacontios is a native and citizen of Greece, fifty years of age. Since July 14, 1943, he has been employed as a seaman on various American vessels of over twenty tons burden. He has never been admitted to the United States for permanent residence but has entered this country on many occasions as an alien seaman.

Vacontios was eligible for naturalization under § 325(a) of the Nationality Act of 1940, which provided that an alien who had served for an aggregate of five years on board certain classes of American vessels [1] could be naturalized without prior admission into the United States for permanent residence. He lost his eligibility when Congress enacted § 26 of the Internal Security Act, 64 Stat. 1015, on September 23, 1950, which

amended § 325(a) by adding the requirement of prior admission for permanent residence as a condition precedent to naturalization thereunder.[2] Section 330(a) (2) of the Immigration and Nationality Act of 1952, which became effective on December 24, 1952, reinstated petitioner's rights under the 1940 Act for one year, by providing that:

" * * * any periods of time prior to September 23, 1950, during all of which any person had served honorably or with good conduct for an aggregate period of five years on any vessel described in section 325 (a) of the Nationality Act of 1940 prior to its amendment by the Act of September 23, 1950, shall be deemed residence and physical presence within the United States within the meaning of Section 316(a) of this title, if such petition [3] is filed within one year from the effective date of this Act. Notwithstanding the provisions of section 318, a person entitled to claim the exemptions contained in this paragraph shall not be required to establish a lawful admission for permanent residence."

Section 330(a) (2) was drafted as a "special equitable provision for * * * alien crewmen" who, like petitioner, had completed five years' sea service prior to September 23, 1950 and whose rights had been cut off by the Internal Security Act of 1950.[4] Petitioner clearly falls within the class sought to be benefited by that section.

Pursuant to the Immigration and Naturalization Service regulations, 8 C.F.R.

1. The classes of American vessels referred to in § 325(a) are:

"(1) * * * any vessel of the United States Government other than in the United States Navy, Marine Corps, or Coast Guard, or (2) * * * vessels of more than twenty tons burden, whether or not documented under the laws of the United States, and whether public or private, which are not foreign vessels, and whose home port is in the United States, * * *."

2. The 1950 amendment to § 325(a) contained a savings clause which provided

that any alien who had filed a petition for naturalization prior to the date of approval of the amendment could be naturalized under the law in effect on the date such petition was filed.

3. The use of the word "such" in "such petition" probably indicates that a reference to § 330(a) (1), which refers to a "petition for naturalization", was intended.

4. H.Rept. No. 1365, 82d Cong., 2d Sess. (1952) 2 U.S.Code Cong. & Adm.News 1952, p. 1739; S.Rept. No. 1137, 82d Cong., 2d Sess. (1952), p. 43.

§ 334.11 (1952 Ed.), petitioner commenced his naturalization proceedings on November 24, 1953,[5] by filing the preliminary "Application to File Petition for Naturalization" (Form N–400) with the Immigration and Naturalization Service. On December 4, 1953, a notice to appear on December 8 for the purpose of filing a petition for naturalization was forwarded to petitioner in care of American Chandlers, 15 Moore Street, New York City, the address set forth on his application. American Chandlers were the operators of the vessel S. S. George M. Culucundis on which petitioner was then employed as a deck engineer. When the notice to appear was received at American Chandlers petitioner was no longer in this country, having departed on a foreign voyage aboard the S. S. George M. Culucundis on December 1, 1953. The notice was relayed to the master of petitioner's vessel while it was passing through the Canal Zone and the following cable was sent by the master to the Immigration and Naturalization Service in New York:

> "Andreas Vacontios file number 2930941 is member of my crew now at sea on foreign articles for a period of six months please grant him waiver to file petition for citizenship upon return from foreign Stop If this impossible extend waiver till December thirtieth this year
>
>> "Master George M Culucundis"

The Service received the above cable on December 16, 1953. The signature "Master George M Culucundis", led the Service to conclude that George M. Culucundis was the name of the master rather than the name of the vessel. Consequently they erroneously believed that no return address had been furnished and deemed it impossible to send a reply. It also appears from an office memorandum that there was doubt that the Service was authorized to bear the cost of a reply cable. As a result, a letter dated December 16, 1953, was sent to petitioner, in care of American Chandlers, stating that the Service was unable to contact him because "no address was furnished whereby you might be reached by cable * * *", and informing him that the law under which he was attempting to file a petition was to expire on December 23; that the Service was without authority to grant an extension; and that if the petition was not actually filed before the deadline, petitioner would lose his rights under Section 330(a) (2). There is no record of this communication having reached petitioner on or before December 23 and it is very unlikely that it could have. Because of all this Vacontios did not file a petition for naturalization until after the expiration of Section 330(a) (2).

On these facts the designated naturalization examiner recommended that naturalization be granted, relying on the savings provisions of § 405(a) of the Act of 1952, 8 U.S.C.A. § 1101 note. However, the Acting Regional Commissioner, after reviewing this recommendation,[6] recommended that the petition be denied. He proceeded upon the theory that the literal language of § 330(a) (2) required the filing of "such petition" on or before December 23, 1953; that the filing of the "Application to File Petition for Naturalization", Form N–400, by petitioner prior to that date, did not comply with the statute and that petitioner had no rights which were preserved by § 405(a). The Government asks me to follow the latter recommendation. On the other hand, petitioner contends that by filing Form N–400 prior to the deadline he complied with § 330(a) (2) and that he is therefore eligible for naturalization without prior admission for permanent residence.

In resolving a conflict of this sort it is important to consider the purpose

---

5. The application was dated October 27, 1953, but the stamp appearing thereon indicates that it was not received by the Immigration and Naturalization Service until November 24, 1953.

6. See 8 C.F.R. § 9.5a(bbb) (1957 pamphlet) and 8 U.S.C.A. § 1446(d).

of Congress in enacting the statute under consideration as well as the specific words used by Congress to achieve its desired result. As was stated by the Supreme Court in Holy Trinity Church v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226, "it is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers"; and again in United States v. American Trucking Associations, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345, it was said that:

> "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words."

These rules have arisen from a recognition that words may often be misleading or ambiguous and that it would be unrealistic for the courts to fail to take cognizance of this infirmity and to consider statutory language in a vacuum.

My recent opinion in In re Flores' Petition, D.C.S.D.N.Y., 147 F.Supp. 259, also involved a seaman who had not filed a petition for naturalization within the period prescribed by § 330(a) . (2). In that case a petition had been filed in December, 1950, three years prior to the

commencement of the one year period. I held that it would be an overly narrow construction and inconsistent with the Congressional intent to deny the petition on the ground that it had been filed too early. In Flores the Immigration Service was fully advised of petitioner's desire to be naturalized long before the deadline. Here, too, the Service had timely notice of Vacontios' intention to apply for citizenship. While a literal interpretation of the statute might call for a denial of both the Flores and Vacontios petitions, such a construction would, I believe, be wholly inconsistent with the Congressional purpose.

It is important to note that the filing of Form N–400 was the only affirmative step a prospective petitioner could take under the Service regulations. He was required to file Form N–400, and having done that, could do no more until notified by the Service to appear for the purpose of filing a petition for naturalization.[7] It is difficult to believe that Congress intended that applicants for naturalization under § 330(a) (2) should lose all their rights by the Service's failure to act promptly, or because of other circumstances beyond the applicant's control. It would seem that the Congressional desire to enact a "special equitable provision for * * * alien crewmen" would be frustrated by the construction urged upon me by the Acting Regional Commissioner. A statute should not be interpreted in a way that would produce an unjust, unreasonable, or absurd result. United States v. Kirby, 7 Wall. 482, 19 L.Ed. 278.

I believe that Congress, in enacting § 330(a) (2) intended to give a qualified alien seaman one year within which to come forward and initiate naturalization proceedings. It has long been the Congressional purpose to protect rights which have accrued in the pre-petition stages of the naturalization process from

---

7. 8 C.F.R. § 334.12 (1952 ed.) provides: "Following the submission of the preliminary application, the applicant shall be notified when and where to appear * * * to file the petition for naturalization."

encroachment by a change in the law. United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615. This purpose is evidenced by the inclusion of savings clauses in this and prior immigration statutes. Savings clauses such as § 405(a) of the Immigration and Nationality Act of 1952 [8] are designed to protect an alien's status or condition under prior statutes and to insure that any rights in process of acquisition will be determined under the law in effect at the time proceedings were first initiated. United States v. Menasche, supra; Petition of Pringle, D.C.E.D.Va., 122 F. Supp. 90, affirmed, 4 Cir., 212 F.2d 878; United States ex rel. Zacharias v. Shaughnessy, 2 Cir., 221 F.2d 578; In re Jocson, D.C.D.Hawaii, 117 F.Supp. 528; Petitions of F–G, D.C.S.D.N.Y., 137 F.Supp. 782.

While a literal reading of the present savings clause might not encompass the situation at bar, the general intent of Congress to protect rights not yet fully accrued, as evidenced by that savings clause, cannot be ignored in construing the language of § 330(a) (2).

In both Petition of Pringle, supra, and In re Jocson, supra, the petitioners commenced their naturalization proceedings by filing Form N–400 prior to the effective date of the 1952 Act. It was held in both cases that by filing the preliminary application the petitioners acquired a status, condition and right in process of acquisition which, under § 405(a), could not be divested by a change in the law.[9] Moreover, as was said by Mr.

Justice Clark in United States v. Menasche, supra, 348 U.S. at page 535, 75 S.Ct. at page 518:

"The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress."

More evidence of the equitable nature of this provision can be gathered from a Senate amendment to § 330(a) (2) which was passed without objection shortly before the final enactment of the whole bill. The original version provided that seamen who sought to qualify under § 330(a) (2) would have to file their petition "on or before September 23, 1952." In a desire to further liberalize the measure, Congress extended the filing deadline to "within one year from the effective date of this act." 98 Cong.Rec. 5758 (1952).

Mr. Walter M. Besterman, the Legislative Assistant to the Committee on the Judiciary, House of Representatives, has written as follows at 8 U.S.C.A. page 83, concerning the provision in question:

"Prior to the enactment of the 1950 law [Act Sept. 23, 1950, c. 1024, Title I, § 26, 64 Stat. 1015], amending section 325 of the Nationality Act of 1940 [c. 876, 54 Stat. 1150], there was no requirement of admission for permanent residence of an alien seaman with service as above specified. The 1950 amendment, however, introduced the re-

---

**8.** Section 405(a) provides:

"Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process

of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes [*sic*], conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *"

**9.** See, also, to the same effect, my opinion in Petition of Carnavas, D.C.S.D.N.Y., 155 F.Supp. 12.

quirement of lawful admission, thus in many cases practically nullifying the benefits of the 'constructive residence' accumulated by seamen who, as quota immigrants, would be chargeable, in most of the known cases, to the small and oversubscribed quotas for Chinese persons, for Greece, Italy, Spain, Portugal, etc.

"The new Act makes provision designed to provide relief for those alien seamen who, on September 23, 1950, (the effective date of the Subversive Activities Control Act [Act Sept. 23, 1950, c. 1024, Title I, §§ 23–30, 64 Stat. 1010–1018]), had completed five years of service on board ship without prior lawful admission but had not yet filed a formal application for naturalization. Under section 1441(a) (2), such seamen, the absence of lawful admission for permanent residence notwithstanding, *may be naturalized, if they file a formal application for naturalization on or before December 23, 1953.*" (Emphasis added.)

It is significant to note that Mr. Besterman, who was present at the hearings of the House Committee, refers to the requirement of filing an "application for naturalization on or before December 23, 1953" rather than a "petition for naturalization." The cases interpreting § 330(a) (2) have also referred to the requirement of making "application" for citizenship within one year from the effective date of the 1952 Act. Applications of Tano, D.C.N.D.Cal., 139 F.Supp. 797, 798, affirmed, 9 Cir., 237 F.2d 916; In re Kiseleff's Petition, D.C. S.D.N.Y., 135 F.Supp. 314, 316.

The Tano case, relied on by both the petitioner and the Acting Regional Commissioner is similar but nevertheless distinguishable from the case at bar. In Tano seven seamen sought naturalization under § 330(a) (2). Some did not have the requisite sea duty prior to September 23, 1950 and were therefore clearly ineligible. The others were qualified in all respects but had not filed their petitions for naturalization within the prescribed time. All the petitions were denied. The important factor present here, but not there, is that Vacontios filed a preliminary application on Form N–400 prior to the deadline while the Tano petitioners had made no move to initiate proceedings until after the section expired. The following language in Tano would seem to indicate that if petitioners there had filed an N–400 the court might have reached a different result:

"Petitioners' various claims that they *attempted* to file petitions for citizenship within the times when they were statutorily eligible were based on the most flimsy and insubstantial evidence, and thus must be rejected." Id., 139 F.Supp. at page 799.

Several additional factors should be mentioned. Vacontios is a seaman. Congress has made special constructive residence provisions for seamen in § 330 because it would otherwise be impossible for persons in that profession to accumulate five years' actual residence in the United States. While it is not unreasonable to require alien seamen serving on American vessels to file a preliminary application with the Immigration Service while on temporary shore leave, it would be quite unreasonable to expect such seamen to abandon their profession temporarily and remain on shore for an indefinite time in anticipation of a notification by the Service to appear for the purpose of filing a petition for naturalization. The unlikelihood of such a requirement becomes apparent when it is considered that most such seamen are aliens who have never been admitted to the United States for permanent residence and if they were to wait in the United States until their notice to appear arrived at some indefinite future time, they would meanwhile very possibly be subject to deportation proceedings. See In re Kiseleff's Petition, supra, and United States ex rel. Jankowski v. Shaughnessy, D.C.S.D.N.

Y., 93 F.Supp. 7, affirmed 2 Cir., 186 F.2d 580, where seamen eligible under § 330(a) (2) or § 325(a) of the 1940 Act were subjected to deportation proceedings when found in the United States.

Vacontios did all he could to comply with the statute in question. He filed a preliminary "Application to File Petition for Naturalization" and then resumed the profession which, as Congress recognized, required him to spend most of his time at sea. An alien seaman serving aboard an American vessel at sea should not be treated differently than one who fortuitously or otherwise remains idly in port. Shio Han Sun v. Barber, D.C.N.D.Cal., 144 F.Supp. 850. When apprised of the notification to appear, Vacontios had the master of his vessel cable for an extension. Because of the confusion as to the return address and the question of who was to bear the cost of a reply cable petitioner was never informed that his request for an extension had been denied. A prompt reply to the master's cable would have given petitioner the opportunity of returning immediately to the United States in order to file the petition for naturalization. This opportunity was denied him. The Service undoubtedly could have obtained the address of the vessel from the operators, American Chandlers. In all probability the problem of financing a reply cable could also have been worked out with American Chandlers. It seems to me that if the Service, faced with a statute about to expire, had done all it could have done, this petitioner would probably not have found himself in his present predicament. When one takes all necessary affirmative steps to comply with the literal requirements of a statute and is prevented from complying fully by the failure of an administrative agency to take the steps necessary to permit his compliance he will not be barred from asserting his rights under that statute. Lee Hong v. Acheson, D.C.N.D.Calif., 110 F.Supp. 60; Lee Bang Hong v. Acheson, D.C.D.Hawaii, 110 F.Supp. 48.

The petition is granted.