## MATTER OF TALANOA

## In Deportation Proceedings

### A-13550300

*Decided by Board August 11, 1967*

Where the Service applied prematurely for a quota number for respondent and had to return it unused to the Department of State because processing of his section 245 application for adjustment of status had not been completed and as a result of the subsequent amendment of section 212(a)(14) of the Act by P.L. 89-236 respondent was subject to the labor certification requirement in order to qualify for adjustment of status, the Service is not now estopped from requiring him to present a labor certification in conjunction with his adjustment application since there is no evidence the Service was remiss in its actual processing of his case and he was given all reasonable opportunity to qualify for such relief both before and after the amendment of section 212(a)(14), and he was, in fact, granted such relief but he now finds himself without that status and ineligible for it as a result of his own actions.

CHARGE:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Nonimmi- · grant—Failed to comply with conditions of status.

ON BEHALF OF RESPONDENT:
Donald L. Ungar, Esquire
Phelan, Simmons & Ungar
517 Washington Street
San Francisco, Calif. 94111
(Oral argument)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney
(Oral argument)

Stephen M. Suffin
Trial Attorney
(Brief submitted)

Deportability on the charge contained in the order to show cause was conceded by respondent at the first hearing held in these proceedings and has never been in issue. Respondent appeals from the special inquiry officer's decision of April 27, 1967, finding him to be subject to the labor certification provisions of section 212(a)(14) and, because he has not presented a labor certification, holding him statutorily ineligible for adjustment under section 245. The prior grant of voluntary departure has been renewed by the special inquiry officer.

Respondent, a native of Tonga, applied for adjustment at a deportation hearing in February, 1964. Under existing State Department de-

terminations, Tonga was then considered a colony or dependency of Great Britain located within the Asia-Pacific Triangle, and a person born therein was statutorily chargeable to the Asia-Pacific quota (former section 202(b) (3), Immigration and Nationality Act). There were no nonpreference Asia-Pacific quota numbers available and respondent could not establish the quota availability necessary under section 245. No appeal was taken from the special inquiry officer's decision denying adjustment and granting voluntary departure.

On October 12, 1964, respondent moved to reopen the proceedings on the ground that Tonga had been recognized by the Department of State as a separate quota area. The special inquiry officer denied the motion on November 19, 1964 and we dismissed the appeal on January 29, 1965 because, although Tonga had its separate quota, nonpreference numbers under that quota were available to persons with a registration priority of January 1, 1961, which respondent did not have.

On March 9, 1965, respondent and several other Tonganese moved to reopen their cases because the quota for Tonga had become current. The Board granted the motion on March 23, 1965 and ordered the hearings reopened, but even before the Board's decision, the Service on March 15, 1965 had requested quota numbers of the Department of State for respondent and the other Tonganese applicants. Such quota numbers were allocated for use during the month of May, 1965, but were returned by the Service because they could not be used during that month, since the cases had not yet been completely processed and reopened hearings could not be held during the month of May.

Respondent's reopened hearing was held on June 22, 1965, and his application for section 245 adjustment was renewed. The special inquiry officer specifically asked the trial attorney whether the adjustment application had been completely processed, and the trial attorney answered that it had not been (Tr. p. 18). Both sides then entered into the usual stipulation that documents in connection with that processing might be made a part of the record, without a reopening of the hearing, unless they contained adverse information, and the hearing was closed.

In or about August, 1965, respondent moved from Hawaii to San Francisco, California, and it was there that a reopened hearing was held on January 13, 1966. Prior to the hearing, Public Law 89-236 had been enacted, containing the changes in section 212(a) (14) which required the presentation of a labor certification by a nonpreference immigrant coming to the United States to perform skilled or unskilled labor. Prior to the hearing, the Service had, by letter, suggested to counsel that respondent obtain a labor certification, and

counsel, also by letter, had taken the position that respondent, who was self-employed as a gardener, was not coming to the United States for the purposes stated in section 212(a)(14) and did not require a certification. At the hearing, both sides maintained the positions initially taken, with the Service adding that the State Department would not allocate a quota number unless advised by the Service that the labor certification had been obtained, and counsel contending that it would be required to issue a number if advised by the Service that respondent was exempt from the certification requirement. The special inquiry officer then ruled that in the situation before him, it was his function to make the decision as to whether a certification was necessary (Tr. pp. 29-31), and the hearing proceeded, its focus being the nature, size, scope, etc. of respondent's claimed business operation. At the close of the hearing, the special inquiry officer rendered an oral decision, declaring the issue to be whether, under the terms of section 212(a)(14), respondent required a certification from the Secretary of Labor, and reasoning as follows:

* * * As I read the statute, the test is whether the nonexempt alien is seeking to enter the U.S. to work, not the form of the legal entity under which he will operate. If the alien's purpose in seeking admission is to perform skilled or unskilled labor, that is, to work, whether it be with hand or mind, for self, for or as part of a partnership, or for a corporation, he is within section 212(a)(14), unless he is in one of the exempt classes.

Evaluating the testimony, he found that respondent's earnings derived principally from his own toil rather than his capital investment, that he therefore was coming to perform labor, and that he came within the certification provisions. Not having presented a certification, respondent was found to be statutorily ineligible for adjustment, and was granted voluntary departure in the exercise of discretion.

On appeal, counsel argued his contention that because respondent was self-employed he did not come within the certification requirement, and he raised the claim that the Government was estopped from requiring a labor certification of respondent because it had allegedly failed to act with due diligence to arrange for a hearing on respondent's application in May, 1965, when it had a quota number for him and before the law had been amended to require a labor certification. The appeal was dismissed on May 17, 1966, the Board being in substantial agreement with the special inquiry officer's finding that respondent was closer to a day laborer than an independent contractor, that there was virtually no investment in the business, and that a certification was required. The estoppel contention was not reached.

Respondent moved for reconsideration on June 16, 1966, alleging changed circumstances: he no longer performed the labor, having

hired an American citizen employee for that purpose, and the business had been enlarged to include the sale of nursery products, respondent's function being to purchase the nursery products and find the customers for them. The estoppel contention was repeated. On July 12, 1966, the case was reopened and remanded for consideration of both issues. At the reopened hearing on September 21, 1966, on the basis of the evidence presented, the special inquiry officer found that respondent was not seeking to enter for the purpose of performing skilled or unskilled labor, and did not require a labor certification; all other aspects of eligibility having been established, the special inquiry officer granted adjustment in the exercise of discretion upon condition that a quota number be allocated to respondent by the Department of State.

The Service appealed, urging that the special inquiry officer had erred in finding a certification was not required, and further, that even if eligibility had been established, respondent did not merit the favorable exercise of discretion. Counsel supported the special inquiry officer's finding as to the labor certification, urged again his estoppel argument, and presented the further one that respondent was exempted from the labor certification requirement under the newly enacted P.L. 89-732 because his application for adjustment had been filed before December 1, 1965. Oral argument was held on December 12, 1966, and on February 10, 1967 the Board affirmed the special inquiry officer's decision and dismissed the Government's appeal.

On March 13, 1967, the Service moved for reconsideration and reopening, presenting material to show that respondent's American citizen employee no longer worked for him, respondent no longer had a business at the address given by him, respondent's business telephone service had been discontinued in November, 1966, and that respondent, as of December 12, 1966 (the date of oral argument) had been working full time for Pan American Airways as a fleet service man, loading and unloading cargo. In his reply brief, counsel conceded the truth of these allegations, but argued that respondent had already met the burden of showing he was not engaged in skilled or unskilled labor at the time of his adjustment application and should not be required to meet that burden again. By order dated April 17, 1967, we granted the Service motion and reopened proceedings, holding that since the cessation of business was reasonably contemporaneous with the hearing at which respondent had the burden of establishing his good faith intention of carrying on such business and his ability to do so, there was sound basis for reconsideration of his eligibility for adjustment. We also held that Public Law 89-732, by its terms, related only to natives of Western Hemisphere countries who had filed appli-

cations for adjustment before December 1, 1965, citing *Matter of Hoeft*, Int. Dec. No. 1723.

At the reopened hearing on April 27, 1967, no new evidence of respondent's eligibility for adjustment under section 245 was offered. Counsel specifically withdrew the previous contention that respondent did not require a labor certification because he had been self-employed. Total reliance was placed upon the claim that the Government, under the circumstances in this particular case, was estopped from requiring a labor certification of respondent. Counsel stated for the record that if the administrative decision should be unfavorable, it was intended to take the case to court for judicial review on the estoppel question. He asked for, and received, clarification on the record that in May of 1965 the Service had had a quota number for respondent. The bulk of the hearing was then taken up with questioning of respondent by the trial attorney on factors relevant to whether respondent merited the favorable exercise of administrative discretion.

The decision now before us was rendered by the special inquiry officer at the close of the hearing on April 27, 1967. In it, he held that respondent was subject to the changed requirements of the law, amended while his case was pending (citing *Patsis* v. *Immigration and Naturalization Service*, 337 F. 2d 733 (8th Cir., 1964), cert. den. 360 U.S. 952 (1965), reh. den. 381 U.S. 921 (1965); and *Foti* v. *Immigration and Naturalization Service*, 332 F. 2d 424 (2d Cir., 1964), which relied on *Fassilis* v. *Esperdy*, 301 F. 2d 429 (2d Cir., 1962)), unless the estoppel contention was valid. He summarized the relevant facts surrounding the receipt and disposition of the quota number in May, 1965 and the processing of respondent's application. He pointed out that all quota numbers assigned for section 245 applications were required to be used during a specified month, and must be returned to the State Department if not used during that month; and although the Service normally made every effort to schedule a hearing during the specified month it might on occasion, despite diligent efforts, become necessary to return a quota number to the State Department. He discussed and rejected counsel's contention that the Service should have advised counsel of the arrival of the quota number and was remiss for not doing so. He stated:

* * * Assuming that counsel for the respondent had intended to arrange for the respondent to come to the mainland for a hearing in May 1965 had he been informed of the assignment of a quota number for the respondent's use during May, it is unreasonable in the light of Service practice, counsel's familiarity therewith, and his silence to have expected the Honolulu office to have divined his unmentioned intention and *sua sponte* to have informed him the respondent's case was ready for hearing and that a quota number had been assigned for use in May, but that hearing could not be held in Hawaii that month, to give counsel

an opportunity to arrange for a hearing outside the Hawaii district. * * * (Decision, p. 8.)

He found nothing in the conduct of the case to warrant an estoppel and held that since respondent required a labor certification and had not presented one, he was ineligible for adjustment of status under section 245. Voluntary departure was granted.

Estoppel is closely related to fraud (cf. p. 80, *Handbook on the Principles of Equity*, Henry L. McClintock, Second Edition, Hornbook Series, 1948).

* * * The vital principal is, that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. * * * Dickerson 1. Colgrove, 100 U.S. 578, at p. 580.

Here, search as we may, we can find nothing in the record to indicate that the Service, by its language or conduct, led respondent to any course of action which he would not otherwise have taken, or led him to change his situation in any way, whether to his detriment or otherwise. Counsel is apparently urging, as the mainstay of his estoppel claim, that the Service was remiss in failing to advise him that it had a quota number available in May, 1965 and that it would not be able to hold a hearing on respondent's application in Hawaii in May. But silence of itself will not raise an estoppel.

* * * To constitute an estoppel by silence there must be something more than an opportunity to speak. There must be an obligation. * * * *Wiser v. Lawler*, 189 U.S. 260, at p. 270.

The record is bare of any showing that it is incumbent upon the Service to advise an applicant or his counsel of the receipt of a quota number allocated for the use of that applicant, or to advise him that it will not be able to schedule his hearing at a particular time.

There is nothing in the file, and counsel alleges nothing, which would justify the estoppel counsel seeks.[1] What appears is that the Service, acting with perhaps excessive diligence, obtained a quota number for respondent prematurely, before it had reached the point in the processing and hearing of his case at which the quota number could be used; realizing this, it returned the quota number at a time when neither it, respondent, counsel, nor the State Department could say with any certainty that another number would not be available when

---

[1] Whether the doctrine of estoppel may be raised against the United States is not entirely clear. See *Sims Motor Transport Lines, Inc. v. United States, et al.*, 9 Ad. L. 2d 931 (N.D. Ill., 1959) ; *Mannerfrid v. Brownell*, 145 F. Supp. 55 ; *Cole v. Railroad Retirement Board*, 289 F. 2d 65, etc. ; 31 Corpus Juris Secundum 291, 675 ; etc.

the processing was completed, or had any idea that the Immigration and Nationality Act would be amended to require a labor certification of respondent when a quota number again became available. Counsel's allegations now as to what he would have done then if he had known the Service had the quota number for use during the month of May, 1965, come within the category of hindsight.

The cases cited by counsel are clearly distinguishable from the instant case. In *McLeod* v. *Peterson*, 283 F. 2d 180, the alien was given incorrect advice by a Service officer as to his eligibility for suspension of deportation, and was assured that his wife would be assisted by the Service in petitioning for preference quota status for him so that he could return from abroad with a visa. In reliance on the statement and assurances, respondent forbore to appeal and left the United States, thereby breaking the continuity of his physical presence here. This action was clearly to his damage, because the Service took no action on its promise to assist his wife with the preference petition and she died without filing a petition; respondent then found himself outside of the United States without anyone who could petition for preference status for him, with a United States citizen child of tender years dependent upon him for support, and with no prospect for a visa. He reentered the United States without a visa and during deportation proceedings applied for suspension of deportation. It was denied to him upon the ground that because of his departure, he had broken the continuity of his physical presence and thus could not show the seven years of continuous presence necessary for statutory eligibility. The Court there held that a fundamental error had been committed by the Government in the information it had given to respondent; respondent had been induced to leave the United States on the basis of that information; to permit the Government to assert the departure which it had induced as an obstacle to the relief which respondent had applied for before his departure and for which he had then been eligible would result in a gross miscarriage of justice. It went on to rule that the continuity of the alien's residence had not been broken by the absence thus brought about. (No mention of estoppel was made, although many of the elements were present; instead, the court acted to prevent a gross miscarriage of justice.)

The second case, *Tejeda* v. *Immigration and Naturalization Service*, 346 F.2d 389, involved the claim by an alien that he had been given demonstrably erroneous information by an American Government official and that because of his reliance thereon, he was prevented from obtaining the necessary documentation to return to the United States on a nonquota visa during the period when such admission was

377

possible, thereby changing his situation to his damage. The Court, finding respondent had definitely been qualified for such a nonquota visa, and relying on the reasoning of *McLeod, supra*, and *Moser* v. *United States*, 341 U.S. 41, remanded the case for further exploration of the facts, stating:

\* \* \* We hold that petitioner would be eligible for relief under at least one set of findings, *viz.*, if it is shown that he was actually and reasonably misled by the affirmative acts and misstatements of the American Consul. To hold to the contrary if this is in fact what transpired, and deny any form of relief from the order of deportation, would result in the punishment of a poorly-educated alien for his reliance on the advice of a presumptively well-informed official of the United States Government. This we would deem improper.

The two other cases referred to by counsel, *Petition of Vacontios*, 155 F. Supp. 427, and *Application of Martini*, 184 F. Supp. 395, both involved naturalization under special eligibility provisions, which petitioners had met at the time when their applications were filed. In each instance, the provisions had a statutory limitation on their period of effectivenes, and the date of expiration was specifically set by the statute. In each case there was indication that the Service had not proceeded with due diligence to fulfill its responsibility in processing these cases after a timely filing of the applications. On a showing of the above facts, the court in each case held that the applicant's rights had been preserved by a timely filing of his application.

In the case before us, even assuming arguendo that counsel's statement is correct and respondent's application had been completely processed by the time the quota number was allocated (but see Tr. p. 18, and the trial attorney's statement, on June 22, 1965, that as of that date the file had not been completely processed) there was no indication whatever of any deadline for any phase of eligibility. The adjustment section is a continuing provision of the Immigration and Nationality Act; respondent had a registration priority date on the Tonga non-preference quota two years earlier than the date of the quota number allocation (see counsel's statement at Tr. p. 96, about anticipated quota availability); and only a clairvoyant could have known that the law would be changed four or five months later to require a labor certification. There was no reason to think of having a special inquiry officer make a special trip from the Mainland to hear respondent's case, or to suggest to counsel that he might wish to have respondent take a trip to the Mainland for a hearing there. There is no showing that other than normal processing of the case was indicated, and no showing that the Service was in any way remiss in its actual processing of the case.

To warrant an estoppel, the fact situation must be a glaring and obvious one in which, to permit the party against whom estoppel is

378

sought to assert as a bar the position that it has induced the claimant to assume would be to countenance a gross miscarriage of justice. This is hardly the picture before us. Respondent was given all reasonable opportunity to qualify for adjustment, both before and after the changes in section 212(a) (14), and in fact was granted an adjustment of status by the special inquiry officer. That he now finds himself without that status and ineligible for it is due to his own actions and not to those of the Service.

We hold, as did the special inquiry officer, that the estoppel claim is without sound basis. The elements necessary for estoppel are not present. In addition, there has been no miscarriage of justice, gross or otherwise; there has been no showing that the Service was remiss in any duty it may have had to this applicant. On the contrary, the respondent has been permitted to remain in the United States for more than four years to await the outcome of the various phases of these proceedings; he has been accorded every opportunity to establish eligibility for adjustment of status; and when he was finally able to establish such eligibility and was granted adjustment, that grant was upheld by this Board until evidence was presented to show that respondent himself had undercut the basis on which he had established eligibility.

The special inquiry officer's decision is a correct one, proper and just in the circumstances, and it will be sustained.

**ORDER:** It is ordered that the appeal herein be and the same is hereby dismissed.

321–654—69——26